IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| QUANTUM FOODS, LLC, *et al.*,[1] | : | Case No. 14-10318 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Ref. Docket No. 12** |

**INTERIM ORDER (1) AUTHORIZING POST-PETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPER PRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING, PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014**

Upon the motion (the "***Motion***")[2] of Quantum Foods, LLC, Quantum Foods 213-D, LLC, Quantum Culinary, LLC, GDC Logistics, LLC, and Choice One Foods, LLC, each as a debtor and debtor-in-possession (collectively, the "***Debtors***"), pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "***Bankruptcy Code***") and in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), in these Chapter 11 Cases (the "***Chapter 11 Cases***"), for entry of an interim order (this "***Interim Order***"), granting the following relief on an interim basis:

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Quantum Foods, LLC (9437); Quantum Foods 213-D, LLC (1862); Quantum Culinary, LLC (1302); GDC Logistics, LLC (1997); Choice One Foods, LLC (9512). The Debtors' mailing address is c/o Quantum Foods, LLC, 750 South Schmidt Road, Bolingbrook, Illinois 60440.

2 Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreements (as defined below).

**(I) Interim DIP Financing**

(A) Authorizing the Debtors to obtain $60,000,000 in post-petition financing, pursuant to that certain *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* (as may be amended, modified, or supplemented, the "***DIP Credit Agreement***"), substantially in the form attached here to as ***Exhibit "1,"*** by and between the Debtors, as borrowers, and Crystal Financial LLC, as Administrative Agent and Collateral Agent (the "***DIP Agent***"), and the Lenders party thereto (the "***DIP Lenders***"), which may be used for the following:

(i) Funding the Debtors' day-to-day operations and working capital needs; and

(ii) Upon entry of the Final Order (as defined below), a roll-up of all outstanding prepetition amounts under the Prepetition Revolving Credit Loan Agreement.

(B) Approval of the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Agent and the DIP Lenders, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("***UCC***") financing statements, and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "***DIP Financing Agreements***");

(C) Granting the DIP Agent for itself and the DIP Lenders the following Liens (as defined in section 101(37) of the Bankruptcy Code) and claims:

(i) First priority priming, valid, perfected, and enforceable Liens (as defined below), subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), upon substantially all of the Debtors' real and personal property as provided in and as contemplated by this Interim Order and the DIP Financing Agreements;

(ii) A superpriority administrative claim status in respect of all obligations under the DIP Financing Agreements (collectively, the "***DIP Obligations***"), subject to the Carve Out as provided herein;

**(II) Interim Use of Cash Collateral**

(A) Authorizing the Debtors' use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("***Cash Collateral***"), in which the Prepetition Lenders (as defined below) has an interest;

(B) Granting the Prepetition Agent and the Prepetition Lenders (each as defined below) certain adequate protection, including, among other things, Prepetition Replacement Liens and Prepetition Superpriority Claims (each as defined below) and certain other adequate protection as described in this Interim Order, to the extent of any diminution in the value of the Prepetition Agent's and the Prepetition Lenders' interest in the Prepetition Collateral, having the priority set forth in this Interim Order, as adequate protection for the granting of the DIP Liens to the DIP Agent for itself and the DIP Lenders, the use of Cash Collateral, and for the imposition of the automatic stay;

**(III)** **Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

**(IV)** **Final Hearing** – Scheduling a final hearing (the "***Final Hearing***") to consider entry of an order (the "***Final Order***") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing;

and upon consideration of the *Declaration of Edgar Reilly in Support of the Company's Chapter 11 Petition and Requests for First Day Relief*, dated February 18, 2014 (the "***Reilly Declaration***") and the *Declaration of Michael Buenzow in Support of the Company's Chapter 11 Petition and Requests for First Day Relief*, dated February 18, 2014 (the "***Buenzow Declaration***"), and the Court having reviewed the Motion and held a hearing with respect to the Motion (the "***Interim Hearing***"); upon the Motion, the Reilly Declaration, and the record of the Interim Hearing and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**I. Procedural Findings of Fact**

A. **Petition Date.** On February 18, 2014 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the

United States Bankruptcy Court for the District of Delaware (the "*Court*"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

B. **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Formation.** No official committee (a "*Committee*") of unsecured creditors, equity interest holders, or other parties in interests has been appointed in the Chapter 11 Cases.

D. **Notice.** The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, to certain parties in interest, including: (i) the Office of the United States Trustee; (ii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estate; (iii) Crystal Financial LLC, as the agent for the Debtors' Prepetition Lenders and for the DIP Lenders (each as defined below); (iv) the attorneys for Crystal Financial LLC; and (v) all secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

## II. Debtors' Acknowledgements and Agreements

E. Without prejudice to the rights of parties in interest as set forth in Paragraphs 22-24 below, each of the Debtors admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs E (1) through E (6) hereof shall be referred to herein as the "***Debtors' Stipulations***"):

(1) **Prepetition Credit Agreements**. Prior to the commencement of the Chapter 11 Cases, each of the Debtors was a party to the following agreements:

(a) that certain Credit Agreement dated as of February 6, 2013 (as amended, supplemented or otherwise modified and in effect from time to time (as amended and in effect, the "***Prepetition Credit Agreement***") with Crystal Financial LLC, as Agent (the "***Prepetition Agent***") and the Lenders party thereto (the "***Prepetition Lenders***"),

(b) that certain Security Agreement and that certain Trademark Security Agreement each dated as of February 6, 2013 (as amended and in effect, collectively the "***Prepetition Security Agreement***") with the Prepetition Agent for its benefit and the benefit of the Prepetition Lenders;

(c) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition Agent or the Prepetition Lenders, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto,

(collectively, as amended, modified, or supplemented and in effect, collectively, the "***Prepetition Financing Agreements***").

(2) **Prepetition Debt Amounts**. As of the Petition Date, the Debtors were indebted to the Prepetition Lenders under the Prepetition Financing Agreements, on account of extensions of credit in the approximate principal amount of $48,638,805, plus interest accrued and accruing (at the rates (including, to the extent allowed, the default rate) set forth in the Prepetition Financing Agreements), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations (collectively the "***Prepetition Debt***"), and

(3) **Prepetition Collateral.** To secure the Prepetition Debt, each of the Debtors granted security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition Lenders upon substantially all of its personal property, (collectively, the "***Prepetition Collateral***").[3] The Liens of the Prepetition Lenders have priority over all other Liens except any Liens which are valid, properly perfected, unavoidable, and senior to the Prepetition Liens (collectively, the "***Permitted Prior Liens***").

(4) **Prepetition Liens.**

(a) As of the Petition Date, each of the Debtors believes the following:

(i) the Prepetition Liens are valid, binding, enforceable, and perfected first-priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

(ii) the Prepetition Debt constitutes legal, valid, and binding obligations of each of the Debtors, enforceable in accordance with the terms of the Prepetition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code),

(iii) no offsets, defenses, or counterclaims to any of the Prepetition Debt exists, and

(iv) the Prepetition Debt constitutes an allowed secured claim, and

(b) On the date that this Interim Order is entered, each of the Debtors has waived, discharged, and released the Prepetition Agent and Prepetition Lenders, together with their affiliates, agents, attorneys, officers, directors, and employees, of any rights each of the Debtors may have

(i) to challenge or object to any of the Prepetition Debt,

(ii) to challenge or object to the security for the Prepetition Debt, and

[3] The acknowledgment and agreement by the Debtors of the Prepetition Debt and the related liens, rights priorities and protections granted to or in favor of the Prepetition Agent and the Prepetition Lenders, as set forth herein and in the Prepetition Financing Agreements, shall constitute a proof of claim on behalf of the Prepetition Agent and the Prepetition Lenders in this Case in respect of the Prepetition Debt.

   (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Agreements or otherwise.

(c) Each of the Debtors does not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Financing Agreements or the Prepetition Liens, or any claim of the Prepetition Agent and the Prepetition Lenders pursuant to the Prepetition Financing Agreements or otherwise.

(5) **Cash Collateral.** The Prepetition Agent and the Prepetition Lenders have a security interest in and Lien on certain Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Debt.

(6) **Priming of DIP Facility**. In entering into the DIP Financing Agreements, and as consideration therefor, each of the Debtors hereby agrees that until such time as all DIP Obligations have been irrevocably paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lenders in its sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, each of the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Agent for itself and the DIP Lenders under this Interim Order by offering subsequent lenders or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

## III. Findings Regarding the Post-Petition Financing.

F. **Need for Post-Petition Financing.** An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estate, their creditors, their equity holders, and the possibility for a successful reorganization or sale of the Debtors' assets.

G.     **No Credit Available on More Favorable Terms.**   The Debtors have

been unable to obtain any of the following:

(1)     unsecured credit allowable under section 503(b)(1) of the Bankruptcy
Code as an administrative expense,

(2)     credit for money borrowed with priority over any or all administrative
expenses of the kind specified in sections 503(b) or 507(b) of the
Bankruptcy Code,

(3)     credit for money borrowed secured solely by a Lien on property of the
estate that is not otherwise subject to a Lien, or

(4)     credit for money borrowed secured by a junior Lien on property of the
estate which is subject to a Lien,

in each case, on more favorable terms and conditions than those provided in the
DIP Credit Agreement and this Interim Order.

The Debtors are unable to obtain credit for borrowed money without granting to the DIP Agent

and the DIP Lenders the DIP Protections (as defined below).

H.     **Prior Liens.**   Nothing herein shall constitute a finding or ruling by this

Court that any Permitted Prior Liens or Prepetition Liens are valid, senior, perfected, or

unavoidable.  Moreover, nothing shall prejudice the following:

(1)     the rights of any party-in-interest, including, but not limited to, the
Debtors, the DIP Agent, the DIP Lenders, and any Committee appointed
pursuant to section 1102 of the Bankruptcy Code, to challenge the
validity, priority, perfection, and extent of any such Permitted Prior Liens,
or

(2)     the rights of any Committee appointed pursuant to section 1102 of the
Bankruptcy Code to challenge the validity, priority, perfection, and extent
of the Prepetition Liens as set forth in this Order.

I.     **Adequate Protection for Prepetition Agent and Prepetition Lenders.**

As a result of the grant of the DIP Liens, subordination to the Carve Out, the use of Cash

Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Agent and

the Prepetition Lenders are entitled to receive adequate protection pursuant to sections 361, 362,

363, and 364 of the Bankruptcy Code for any decrease in the value of its interest in the Prepetition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral) during these Chapter 11 Cases. As adequate protection, the Prepetition Agent and the Prepetition Lenders will receive the Adequate Protection (as defined below) described in Paragraph 14 of this Interim Order. In light of such Adequate Protection, the Prepetition Agent and the Prepetition Lenders have agreed (1) to the Debtors' use of Cash Collateral, on the terms set forth in this Interim Order, (2) that such Adequate Protection adequately protects the Prepetition Agent and the Prepetition Lenders, and (3) that subject to Paragraphs, 15, 35, and 36 no further adequate protection is necessary.

J. **Prepetition Agent's and Prepetition Lenders' Consent to Priming.** The Prepetition Agent and the Prepetition Lenders have consented to the priming of the Prepetition Liens by the DIP Liens.

K. **Adequacy of the Approved Budget.** The Debtors believe that the Approved Budget (as defined below), attached hereto as ***Exhibit "2,"*** is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by this Interim Order.

L. **Section 552 of the Bankruptcy Code**. In light of their agreement to subordinate their Liens and superpriority claims (1) to the Carve Out, in the case of the DIP Agent and the DIP Lenders, and (2) to the Carve Out and the DIP Liens, in the case of the Prepetition Agent and the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are each entitled to all rights and benefits of section 552(b) of

the Bankruptcy Code and upon entry of the Final Order, the Debtor shall not assert that the "equities of the case" exception shall apply.

M. **Conditions Precedent to DIP Lenders' Extension of Financing.** The DIP Lenders have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Financing Agreements and subject to the following:

(1) the entry of this Interim Order and the Final Order, and

(2) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lenders is a good faith financier, and that the DIP Lenders' claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Interim Order (or the Final Order) or any other order, as provided in section 364(e) of the Bankruptcy Code.

N. **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.** The terms and conditions of the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Agent and the DIP Lenders, and the use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Agent and the DIP Lenders are entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

O. **Relief Essential; Best Interest.** The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets

and personal property. It is in the best interest of the Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing Agreements. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1. The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order, the DIP Credit Agreement, and the other DIP Financing Agreements.

**I. DIP FINANCING.**

**A. Approval of Entry into the DIP Financing Agreements.**

2. The Debtors are expressly and immediately authorized, and empowered to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements. The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Credit Agreement and all other DIP Financing Agreements as such become due, including, without limitation, the Closing Fee, Administrative Fee, Commitment Fee, and reasonable attorneys', financial advisors' and accountants' fees, and disbursements as provided for in the DIP Credit Agreement which amounts, subject to the provisions of Paragraph 45 below, shall not otherwise be subject to approval of this Court. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

**B.     Authorization to Borrow.**

3.      In order to enable them to continue to operate their businesses during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Agreements, and the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtors are hereby authorized under the DIP Facility to borrow up to a total committed amount of $27,500,000 in accordance with the terms and conditions of the DIP Credit Agreement.

**C.     Application of DIP Proceeds.**

4.      The proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely as follows:

(a)     to pay costs, expenses and fees in connection with the preparation, negotiation, execution and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

(b)     for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, capital expenditures, and other lawful corporate purposes of the Debtors;

(c)     upon entry of the Final Order, to refinance the Roll-Up Obligations, as provided in Paragraph 14(c)(iv) below; and

(d)     upon entry of the Final Order, to fund the Prepetition Indemnity Account (as defined below).

**D. Conditions Precedent.**

5. The DIP Lenders shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived, as determined by the DIP Lenders in their reasonable discretion, in accordance with the DIP Credit Agreement.

**E. The DIP Liens.**

6. Subject to the limitations set forth in paragraph 6(b) below, effective immediately upon the entry of this Interim Order, the DIP Agent for itself and the DIP Lenders is hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens (collectively, the "***DIP Liens***") senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order, upon and to all of the following (collectively, the "***DIP Collateral***"):

(a) The Collateral, as defined in the Prepetition Security Agreement, including:

(i) all Accounts;

(ii) all Goods, including Equipment, Inventory and Fixtures;

(iii) all Documents, Instruments and Chattel Paper;

(iv) all Letters of Credit and Letter-of-Credit Rights;

(v) all Securities Collateral;

(vi) all Investment Property;

(vii) all Intellectual Property Collateral;

(viii) all Commercial Tort Claims, including, without limitation, those described in Section IV of the Information Certificate;

(ix) all General Intangibles;

(x) all Deposit Accounts;

(xi)     all Supporting Obligations;

(xii)    all books and records relating to the Collateral; and

(xiii)   to the extent not covered by the foregoing clauses (i) through (xii), all other personal property of the Debtors, whether tangible or intangible, and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from time to time with respect to any of the foregoing.

(b)     Bankruptcy Recoveries (as defined below), but only (A) the full amount of any such recovery or settlement thereof to the extent arising under Section 549 of the Bankruptcy Code and (B) subject to entry of the Final Order, all amounts necessary to reimburse the DIP Lenders for the amount of the Carve Out, if any, used to finance the pursuit of such recovery or settlement with respect to all other Bankruptcy Recoveries (the foregoing Bankruptcy Recoveries in (A) and (B) being referred to collectively as the "**Specified Bankruptcy Recoveries**").  As used herein, "Bankruptcy Recoveries" shall mean any claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under Chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof.

(c)     The proceeds of all of the Debtors' interests in leaseholds, but not the leaseholds themselves, whether or not so perfected prior to the Petition Date.

**F.     DIP Lien Priority.**

7.     The DIP Liens to be created and granted to the DIP Lenders, as provided herein, are:

(a)     created pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code,

(b)     first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)     subject only to (i) the Carve Out, and (ii) the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Credit Agreement.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against

any trustee appointed in the Chapter 11 Cases, upon the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "***Successor Case***"), and/or upon the dismissal of the Chapter 11 Cases. The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code. Upon entry of the Final Order, the DIP Liens shall not be subject to an assertion by the Debtors of the "equities of the case" exception of section 552 of the Bankruptcy Code, and shall not be subject to section 506(c) of the Bankruptcy Code.

**G. Enforceable Obligations.**

8. The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, and shall be enforceable against the Debtors, their estates, and any successors thereto, and their creditors in accordance with their terms.

**H. Protection of the DIP Lenders and Other Rights.**

9. From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order and in compliance with the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

**I. Superpriority Administrative Claim Status.**

10. Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with the DIP Liens, collectively, the "***DIP Protections***") with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation,

administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment; ***provided, however***, that the DIP Protections shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries.

11. Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Agent and the DIP Lenders arising hereunder.

## II. USE OF CASH COLLATERAL

### A. Authorization to Use Cash Collateral.

12. Pursuant to the terms and conditions of this Interim Order, the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and in accordance with and as may be limited by the budget (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement, the "***Approved Budget***"), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility during the period commencing immediately after the entry of the Interim Order and terminating upon notice being provided by the DIP Lenders to the Debtor that (i) a DIP Order Event of Default (as defined below) has occurred and is continuing, and (ii) the termination of the DIP Credit Facility.

13.    Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except (x) with respect to the sale of assets as contemplated in the Sale Motion (as defined in the DIP Credit Agreement) and the assumption and assignment of leases as contemplated in the Sale Motion, and (y) as otherwise permitted in the DIP Facility under the DIP Credit Agreement and the other DIP Financing Agreements and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

**B.    Adequate Protection for Prepetition Agent and Prepetition Lenders.**

14.    As adequate protection for the interest of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve Out, the Debtors' use of Cash Collateral, and other decline in value arising out of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Prepetition Collateral, including the disposition of assets as contemplated in the Sale Motion, the Prepetition Agent and the Prepetition Lenders shall receive adequate protection as follows (collectively, "***Adequate Protection***"):

(a)    **Prepetition Replacement Liens**.  Solely to the extent of the diminution in the value of the interest of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral, the Prepetition Agent and the Prepetition Lenders shall have, subject to the terms and conditions set forth below, pursuant to sections 361 and 363(e) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "***Prepetition Replacement Liens***") which shall be junior only to the Carve Out, the DIP Liens securing the DIP Facility, and Permitted Prior Liens.

(b)    **Prepetition Superpriority Claim**.  Solely to the extent of the diminution in the value of the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral, the Prepetition Agent and the Prepetition Lenders shall have an allowed superpriority administrative expense claim (the "***Prepetition Superpriority Claim***") which shall have

priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim, and (iii) the Carve Out), in the Chapter 11 Cases under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment; ***provided, however***, that the Prepetition Superpriority Claim shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries.

Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, will be senior to, prior to, or on parity with the Prepetition Superpriority Claim.

(c) **Adequate Protection Payments**. The Prepetition Agent and the Prepetition Lenders shall receive adequate protection in the form of the following:

(i) the current payment of the reasonable documented out-of-pocket costs and expenses of its financial advisors and attorneys,

(ii) on the first day of each calendar month, commencing March 1, 2014, cash interest at the "Default Rate" as provided in the Prepetition Financing Agreements,

(iii) all products and proceeds of the Prepetition Collateral and the DIP Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions thereof, whether or not in the ordinary course,) regardless of whether such collateral came into existence prior to the Petition Date, shall be applied as follows: (x) first, to reduce the Prepetition Debt until paid in full, and (y) second, to reduce the DIP Obligations until paid in full, and

(iv) upon entry of the Final Order, payment in full of the remaining Prepetition Debt (the "***Roll-Up Obligations***").

(d) **Adequate Protection Upon Closing of Sale**. Upon the disposition of Prepetition Collateral as contemplated in the Sale Motion and the closing

conducted under the Sale Agreement, any such Prepetition Collateral shall be sold free and clear of the Prepetition Liens, the Prepetition Replacement Liens, and the DIP Liens, ***provided***, ***however***, that such Prepetition Liens, Prepetition Replacement Liens, and DIP Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order.

(e) **Prepetition Indemnity Account**. Upon the earlier of the entry of the Final Order or the sale of the Debtors' assets as provided in clause (d) above, the Debtors shall establish an account in the control of the Prepetition Agent and the Prepetition Lenders (the "***Prepetition Indemnity Account***"), into which the sum of $150,000 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition Agent or the Prepetition Lenders under the Prepetition Financing Agreements, including without limitation, the provisions of Sections 10.04 (a) and (b) of the Prepetition Credit Agreement (the "***Prepetition Indemnity Obligations***").

(i) Upon the Challenge Period Termination Date (as defined below) if, as of such date, no party has filed (x) an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 22 hereof, or (y) an adversary proceeding, cause of action, objection, claim, defense, or other challenge against the Prepetition Agent or the Prepetition Lenders related to the Prepetition Debt, whether in the Chapter 11 Cases or independently in another forum, court, or venue (together, a "***Challenge Proceeding***"), all amounts held in the Prepetition Indemnity Account shall be released to the Debtors.

(ii) The Prepetition Indemnity Obligations shall be secured by a first priority lien on the Prepetition Indemnity Account and by a lien on the Prepetition Collateral, Prepetition Replacement Liens, and the Pre-Petition Superpriority Claim.

(iii) The Prepetition Agent and the Prepetition Lenders may apply amounts in the Prepetition Indemnity Account against the Prepetition Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee or any other parties in interest and without further order of this Court.

**C. Section 507(b) Reservation for the Prepetition Lenders to Seek Further Adequate Protection.**

15. Nothing herein shall impair or modify the Prepetition Agent's or the Prepetition Lenders' rights under section 507(b) of the Bankruptcy Code in the event that the

adequate protection provided to the Prepetition Agent and the Prepetition Lenders hereunder is insufficient to compensate for the diminution in value of the interest of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral during the Chapter 11 Cases or any Successor Case; ***provided*, *however***, that any section 507(b) claim granted in the Chapter 11 Cases to the Prepetition Agent and the Prepetition Lenders shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

## III. POST-PETITION LIEN PERFECTION.

16. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Prepetition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Prepetition Replacement Liens or to entitle the DIP Liens and the Prepetition Replacement Liens to the priorities granted herein.

17. Notwithstanding the foregoing, the DIP Agent and/or the Prepetition Agent may, in their discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

18. The Debtors shall execute and deliver to the DIP Agent all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar

instruments and documents as the DIP Agent or the DIP Lenders may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens granted pursuant hereto.

19. The DIP Agent and the Prepetition Agent, in their discretion, may file a photocopy of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

20. The DIP Agent and the DIP Lenders shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be have the co-equal rights with the Prepetition Agent and the Prepetition Lenders (and upon payment in full of the Prepetition Debt, shall succeed to the rights of the Prepetition Agent and the Prepetition Lenders) with respect to all third party notifications in connection with the Prepetition Revolver Financing Agreements, all Prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtor and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

21. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Financing Agreements as necessary to:

(a) permit the Debtors to grant the Prepetition Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Agent and the DIP Lenders under the DIP Financing Agreements, the DIP Facility, and this Interim Order, and

(b) authorize the DIP Agent , the DIP Lenders, the Prepetition Agent and the Prepetition Lenders to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Interim Order.

## IV. RESERVATION OF CERTAIN THIRD-PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS.

22. Nothing in this Interim Order or the DIP Credit Agreement shall prejudice whatever rights any Committee(s) or any other party-in-interest with requisite standing (other than the Debtors) may have to bring a Challenge Proceeding, including any of the following:

(a) to object to or challenge the Debtors' Stipulations, including (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Agent and the Prepetition Lenders in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Debt, or

(b) to bring suit against the Prepetition Agent or the Prepetition Lenders in connection with or related to the Prepetition Debt, or the actions or inactions of the Prepetition Agent and the Prepetition Lenders arising out of or related to the Prepetition Debt;

***provided, however***, that any official Committee(s) or any other party-in-interest with requisite standing must commence a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Agent and the Prepetition Lenders in the nature of a setoff, counterclaim, or defense to the Prepetition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Agent or the Prepetition Lenders), by the later of (x) sixty (60) days following the appointment of the first official Committee, or (y) if no official Committee is appointed, seventy-five (75) days following entry of the Final Order (collectively, (x) and (y) shall be referred to as the "***Challenge Period***" and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "***Challenge Period Termination Date***").

23.     Upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any official Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) **shall be deemed to be forever waived and barred**, and the Prepetition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders, and parties-in-interest.

24.     To the extent any such Challenge Proceeding is filed, the Prepetition Agent and the Prepetition Lenders shall be entitled to include the costs and expenses, including but not limited to reasonable attorneys' fees and disbursements, incurred in defending the objection or complaint as part of the Prepetition Debt to the extent permitted pursuant to the relevant Prepetition Financing Agreement.  To the extent any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the Prepetition Agent and the Prepetition Lenders shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Prepetition Debt and as part of the Prepetition Indemnity Obligations which shall be reimbursed by the Debtors, including (x) each month as provided for in Paragraph 44, below, and (y) out of the Prepetition Indemnity Account, and as one of the Prepetition Superpriority Claims, and the Pre-Petition Indemnity Account shall be maintained until the final resolution of all such objections or claims.   The Debtors shall remain liable to the Prepetition Agent and the Prepetition Lenders for all unpaid Prepetition Indemnity Obligations to the extent that the funds in the Prepetition Indemnity Account are insufficient to satisfy them in full.

## V. CARVE OUT AND PAYMENT OF PROFESSIONALS.

25. Subject to the terms and conditions contained in this Paragraph 25, the DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims are subordinate only to the following (collectively, the "***Carve Out***"):

(a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6) and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (collectively, the "***U.S. Trustee Fees***");

(b) all accrued and unpaid fees, disbursements, costs and expenses, to the extent allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice and incurred by professionals retained by the Debtors or a Committee, if any, (the "***Case Professionals***"), through the date of service by the DIP Agent of a Carve Out Trigger Notice (as defined below), as limited by the respective Approved Budget amounts for each Case Professional or category of Case Professional through the date of service of said Carve Out Trigger Notice (including partial amounts for any Carve Out Trigger Notice given other than at the end of a week), less the amount of pre-petition retainers received by such Case Professionals; and

(c) (iv) all accrued and unpaid fees, disbursements, costs and expenses incurred by the Case Professionals after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $150,000 less the amount of pre-petition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (b) above. The Carve-Out shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals. For purposes of the foregoing, "***Carve Out Trigger Notice***" shall mean a written notice delivered by the DIP Agent to the Borrowers and their counsel, the U.S. Trustee, and lead counsel to any Committee, which notice may be delivered at any time following the occurrence and continuance of any DIP Order Event of Default.

26. For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims, and any and all other forms of adequate protection, Liens, or claims

securing the DIP Obligations and/or the Prepetition Debt granted or recognized as valid. Any unused portion of the Carve Out shall at all times remain Cash Collateral as provided herein.

27. Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expenses of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders to object to the allowance and payment of such fees and expenses on any ground other than the existence or priority of the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims.

## VI. COMMITMENT TERMINATION DATE, DIP EVENT OF DEFAULT, AND REMEDIES

### A. Commitment Termination Date.

28. All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (the "***Commitment Termination Date***"):

(a) August 18, 2014;

(b) the date on which the maturity of the DIP Obligations is accelerated and the commitments under the DIP Facility (the "***DIP Commitments***") have been irrevocably terminated as a result of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement;

(c) the failure of the Debtors to obtain entry of the Final Order on or before the date which is thirty (30) days after the date this Interim Order is entered;

(d) the effective date of a chapter 11 plan (a "***Plan***"); or

(e) the closing of a sale following entry of an Order by the Bankruptcy Court authorizing the sale of all or substantially all of the assets of the Debtor pursuant to the provisions of Section 363 of the Bankruptcy Code.

**B. DIP Events of Default.**

29. The occurrence of the Commitment Termination Date shall constitute a "***DIP Order Event of Default.***"

30. Unless and until the Prepetition Debt and the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the Prepetition Debt and the DIP Obligations satisfactory to the Prepetition Agent and the Prepetition Lenders, and the DIP Agent and the DIP Lenders, respectively, in their sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to the Prepetition Agent, the Prepetition Lenders, the DIP Agent and the DIP Lenders pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting the Chapter 11 Cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims shall continue in the Chapter 11 Cases and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Prepetition Replacement Liens, and Prepetition Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

**C. <u>Rights and Remedies Upon DIP Order Event of Default</u>.**

31. Any automatic stay otherwise applicable to the DIP Lenders is hereby modified so that (i) after the occurrence of any Event of Default under the DIP Financing Agreements, the DIP Agent and the DIP Lenders may accelerate the DIP Obligations without further order of the Court, and (ii)(A) after the occurrence of any DIP Order Event of Default or (B) at any time thereafter during the continuance of such DIP Order Event of Default, upon five (5) days prior written notice of such occurrence, in each case given to each of (w) the Debtors, (x) counsel to the Debtors, (y) counsel for any Committee(s) or the twenty (20) largest unsecured

creditors, and (z) the Office of the United States Trustee, the DIP Lenders shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Agreements.

32. Upon the occurrence of an Event of Default under the DIP Financing Agreements and provided that such Event of Default is still continuing:

(a) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lenders as provided in the DIP Financing Agreements and this Interim Order;

(b) the DIP Lenders shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Agreements and this Interim Order;

(c) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve Out; and

(d) any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended.

33. Following the giving of written notice by the DIP Lenders of the occurrence of a DIP Order Event of Default, the Debtors and any Committee(s) appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred. If the Debtors or any such Committee(s) do not contest the occurrence of a DIP Order Event of Default and the right of the DIP Lenders to exercise its remedies, or if the Debtors or any such Committee(s) do timely contest the occurrence of a DIP Order Event of Default and the Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Lenders, shall automatically terminate at the end of the five (5) day notice period provided in paragraph 31 above.

34. Subject to the provisions of Paragraphs 31, 32, and 33 above, upon the occurrence of a DIP Order Event of Default, the DIP Agent and the DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements;

except that, with respect to any of the Debtors' leasehold locations, the DIP Lenders' rights shall be limited to such rights (i) as may be ordered by the Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Agent; or (iii) which the DIP Agent and the DIP Lenders have under applicable non-bankruptcy law. All proceeds realized from any of the foregoing shall be turned over to the DIP Agent for application to the Carve Out (if not previously funded as provided herein), the DIP Obligations, and the Prepetition Debt under, and in accordance with the provisions of, the DIP Financing Agreements and this Interim Order.

35. Nothing included herein shall prejudice, impair, or otherwise affect the Prepetition Agent's, the Prepetition Lenders', the DIP Agent's or the DIP Lenders' rights to seek any other or supplemental relief in respect of the Debtors, nor the DIP Agent's or the DIP Lenders' rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement.

**D. <u>No Waiver of Remedies</u>.**

36. The delay in or the failure of the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Agent's, the Prepetition Lenders', the DIP Agent's and the DIP Lenders' rights and remedies. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the Prepetition Agent's, the Prepetition Lenders', the DIP Agent's or the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Agent's, the Prepetition Lenders', the DIP Agent's and the DIP Lenders to (i) request conversion of the

Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the Prepetition Agent, the Prepetition Lenders, the DIP Agent and DIP Lenders may have.

## VII. CERTAIN LIMITING PROVISIONS

### A. Section 506(c) Claims and Waiver.

37. Nothing contained in this Interim Order shall be deemed a consent by the Prepetition Agent, the Prepetition Lenders, the DIP Agent and DIP Lenders to any charge, Lien, assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Prepetition Replacement Liens under section 506(c) of the Bankruptcy Code or otherwise; ***provided, however***, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

38. As a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Financing Agreements, upon entry of the Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code with respect to the Prepetition Agent, the Prepetition Lenders, the DIP Agent, DIP Lenders, the Prepetition Collateral, and the DIP Collateral.

### B. Proceeds of Subsequent Financing.

39. Without limiting the provisions and protections of Paragraph 40 below, if at any time prior to the irrevocable repayment in full of all Prepetition Debt and DIP Obligations and the termination of the DIP Lenders' obligations to make loans and advances under the DIP

Facility, including subsequent to the confirmation of any Plan with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent and applied in reduction of the DIP Obligations and thereafter to the Prepetition Agent to be applied in reduction of the Prepetition Debt.

**C. Prohibited Orders.**

40. Unless each of the Prepetition Agent and the DIP Agent has provided its prior written consent or all Prepetition Debt and all DIP Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash upon entry of an order approving indebtedness described in Paragraph 39 above, or other arrangements for the payment of the Prepetition Debt and the DIP Obligations satisfactory to the Prepetition Agent and the DIP Agent, respectively, in its sole and exclusive discretion have been made) and all DIP Commitments (as defined below) have terminated, there shall not be entered in the Chapter 11 Cases, or in any Successor Case, any order which authorizes any of the following:

(a) Any modification, stay, vacation or amendment to the DIP Orders to which the DIP Agent and the DIP Lenders have not consented;

(b) A priority claim or administrative expense or unsecured claim against the Debtors (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114 of the Bankruptcy Code) equal or superior to the priority claim of the DIP Agent and the DIP Lenders in respect of the Obligations, except with respect to the Carve Out;

(c) Any Lien on any DIP Collateral having a priority equal or superior to the Lien securing the DIP Obligations, except (a) with respect to the Carve Out, or (b) for the Permitted Prior Liens;

(d) Any order which authorizes the return of any of the Debtors' property pursuant to section 546(h) of the Bankruptcy Code; or

(e) Any order which authorizes the payment of any Indebtedness (other than the Prepetition Debt, Indebtedness reflected in the Approved Budget, and other Indebtedness approved by the DIP Lenders, in each case incurred prior to the Petition Date or the grant of "adequate protection" (whether payment in cash or transfer of property) with respect to any such Indebtedness which is secured by a Lien other than as set forth in the DIP Orders).

**D. Restrictions on Disposition of Collateral.**

41. The Debtors shall not do the following:

(a) sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the requisite DIP Lenders to the extent required under the DIP Financing Agreements (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders or an order of this Court), except for the following:

(i) sales of the Debtors' Inventory in the ordinary course of business,

(ii) as part of the disposition of assets as contemplated in the Sale Motion, or

(iii) except as otherwise provided for in the DIP Financing Agreements and this Interim Order and approved by the Court, or

(b) assume, reject, or assign any Lease without the prior written consent of the DIP Lenders, except as contemplated in the Sale Motion, a Plan, or as otherwise provided for in the DIP Financing Agreements.

## VIII. OTHER RIGHTS AND OBLIGATIONS

**A. Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order.**

42. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, the Prepetition Agent, the Prepetition Lenders, DIP Agent, and the DIP Lenders are entitled to the

protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or the Liens or priority authorized or created hereby.

43.    Notwithstanding any modification, amendment, or vacation of any or all of the provisions of this Interim Order, any claim or protection granted to the Prepetition Agent, the Prepetition Lenders, the DIP Agent, or the DIP Lenders hereunder arising prior to the effective date of such modification, amendment, or vacation of any such claim or protection granted to the Prepetition Agent, the Prepetition Lenders, the DIP Agent, or the DIP Lenders shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Agent, the Prepetition Lenders, the DIP Agent, and the DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits, including the Adequate Protection and the DIP Protections granted herein, with respect to any such claim, including those found under 11 U.S.C. § 364(e).

**B.    Prepetition Lenders and DIP Lenders Expenses.**

44.    As provided in the Prepetition Financing Agreements and in the DIP Financing Agreements, all reasonable out-of-pocket costs and expenses of the Prepetition Agent, the Prepetition Lenders, the DIP Agent and the DIP Lenders, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, whether or not contained in the Approved Budget and without limitation with respect to the dollar estimates contained in the Approved Budget, will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated.  Payment of such fees shall not be subject to allowance by the Court; ***provided, however***, the Debtors may seek a determination by

the Court whether such fees and expenses are reasonable. Under no circumstances shall professionals for the DIP Agent, the DIP Lenders, the Prepetition Agent or Prepetition Lenders be required to comply with the U.S. Trustee fee guidelines; ***provided, however***, the Debtors shall provide to the Office of the United States Trustee a copy of any invoices received from the DIP Agent and the Prepetition Agent for professional fees and expenses during the pendency of the Debtors' Chapter 11 Cases and shall reimburse the Prepetition Agent, the Prepetition Lenders, the DIP Agent and the DIP Lenders for all such fees in expenses within ten (10) days of receipt of a copy of each invoice, in the absence of a specific written objection as to the reasonableness of the amounts contained in the subject invoice.

**C. Binding Effect.**

45. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), and any Committee(s) (subject to the provisions of Paragraphs 22-24 above), whether in the Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

**D. No Third Party Rights.**

46. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

**E. No Marshaling.**

47. None of the DIP Agent, the DIP Lenders, the Prepetition Agent, nor the Prepetition Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

**F. Section 552(b) of the Bankruptcy Code.**

48. Upon entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtors shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

**G. Amendments.**

49. The Debtors, the DIP Agent, and the DIP Lenders may amend, modify, supplement, or waive any provision of the DIP Financing Agreements with the consent of the Prepetition Agent and the Prepetition Lenders, but without further approval of the Court, unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments, or (iii) changes the maturity date of the DIP Facility. Except as set forth above, all waivers, modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors, the DIP Agent and the DIP Lenders (after having obtained the approval of the Prepetition Agent and the Prepetition Lenders, and the DIP Lenders as provided in the DIP Financing Agreements) and approved by the Court.

**H. Survival of Interim Order.**

50. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a) confirming any Plan in the Chapter 11 Cases,

(b) converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code,

(c) to the extent authorized by applicable law, dismissing the Chapter 11 Cases,

(d) withdrawing of the reference of the Chapter 11 Cases from this Court, or

(e) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

51. The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Agreements and any protections granted the Prepetition Agent and the Prepetition Lenders shall continue in full force and effect notwithstanding the entry of any order described in paragraph 50, and such DIP Protections and protections for the Prepetition Agent and Prepetition Lenders shall maintain their priority as provided by this Interim Order until all of the DIP Obligations of the Debtors to the DIP Agent and the DIP Lenders pursuant to the DIP Financing Agreements and the Prepetition Debt have been irrevocably paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

**I. Inconsistency.**

52. In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.

**J. Enforceability.**

53. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

**K. Objections Overruled.**

54. Notwithstanding any reservations of rights made on the record at the first day hearing with respect to this Interim Order, all objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

**L. Waiver of Any Applicable Stay.**

55. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

**M. Proofs of Claim.**

56. The Prepetition Agent, the Prepetition Lenders, the DIP Agent and the DIP Lenders will not be required to file proofs of claim in the Chapter 11 Cases or in any Successor Case.

**N. Headings.**

57. The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**IX. FINAL HEARING.**

58. **The Final Hearing on the Motion shall be held before this Court on March 12, 2014, at 1:00 p.m. (ET).**

59. If no objections to the relief sought in the Motion are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented jointly by the Debtors and by the DIP Lenders and entered by this Court.

60. Any party in interest objecting to the relief sought in the Motion shall submit any such objection in writing and file same with the Court and serve such objection so as to be received no later than **March 5, 2014 at 4:00 p.m. (ET)** on the following parties:

| ***Debtor***<br><br>Quantum Foods, LLC<br>750 South Schmidt Road<br>Bolingbrook, Illinois 60440<br>Attn: Edgar Reilly<br>Fax: (630) 679-9402<br>Email: ereilly@quantumfoods.com | ***Office of the U.S. Trustee***<br><br>Office of the United States Trustee for the District of Delaware<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: Richard L. Schepacarter<br>Email: richard.schepacarter@usdoj.gov |
|---|---|
| ***Counsel for the Debtors***<br>Winston & Strawn LLP<br>Daniel J. McGuire<br>Gregory M. Gartland<br>35 West Wacker Drive<br>Chicago, Illinois 60601<br>Telephone: (312) 558-5600<br>Facsimile: (312) 558-5700<br>Email: dmcguire@winston.com<br>ggartland@winston.com<br><br>and<br><br>Young Conaway Stargatt & Taylor, LLP<br>M. Blake Cleary (No. 3614)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mbcleary@ycst.com | |
| ***Counsel for the DIP Lenders***<br>Riemer & Braunstein LLP<br>Three Center Plaza,<br>Boston, Massachusetts 02108<br>Attn: Donald E. Rothman, Esq.<br>E-mail: drothman@riemerlaw.com<br>Fax: (617) 880-3456<br><br>and | |

| | |
|---|---|
| Womble Carlyle Sandridge & Rice, LLP<br>222 Delaware Avenue, Suite 1501<br>Wilmington, DE 19801<br>Attn: Steven K. Kortanek, Esq.<br>E-mail: skortanek@wcsr.com<br>Fax: 302-661-7728 | |

Dated: February 20, 2014

Kevin J. Carey
United States Bankruptcy Judge