**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| QUANTUM FOODS, LLC, *et al.*, | Case No 14-10318 (KJC) |
| Debtors.[1] | Jointly Administered |
| | Requested Hearing Date: May 21, 2014 at 10:00 a.m. (ET)<br>Proposed Objection Deadline: At the Hearing |

**DEBTORS' MOTION FOR ENTRY OF FIRST AMENDED ORDER AMENDING FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPER PRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY, PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014**

Quantum Foods, LLC and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the "Company"), file this motion (this "Motion") for (a) entry of an order substantially in the form attached hereto as Exhibit A (the "Amended Order") amending that certain *Final Order (1) Authorizing Post-Petition Financing, (2) Granting Liens and Providing Super Priority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (4) Modifying the Automatic Stay, Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014* [Docket No. 167] (the "Final DIP Order").[2] In support of this Motion, the Debtors respectfully represent as follows:

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Quantum Foods, LLC (9437); Quantum Foods 213-D, LLC (1862); Quantum Culinary, LLC (1302); GDC Logistics, LLC (1997); Choice One Foods, LLC (9512). The Debtors' mailing address is c/o Quantum Foods, LLC, 750 South Schmidt Road, Bolingbrook, Illinois 60440.

2 Each capitalized term used but not defined herein shall have the meaning given to it in the Final DIP Order.

01:15463318.2

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 20 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105 and 364 of title 11 of the United States Code (the "Bankruptcy Code").

## INTRODUCTION

4. On the Petition Date, each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in the Chapter 11 Cases.

6. Information regarding the Debtors' businesses, their capital and debt structure, the events leading to the filing of the Chapter 11 Cases, and the Debtors' efforts to obtain debtor-in-possession financing is contained in the *First Day Declaration of Edgar Reilly in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") and the *Declaration of Michael Buenzow* in support of this Motion (the "Buenzow Declaration").

## RELIEF REQUESTED

7. The Debtors refer to and incorporate the summary of relief requested set forth in the Debtors' motion (the "DIP Motion") [Docket No. 12] for entry of the Interim Order and Final DIP Order, respectively.

8. By this Motion, and for the reasons set forth below as a result of changes in the circumstances of these chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105 and 364 of the Bankruptcy Code, the Debtors respectfully request that the Bankruptcy Court enter the Amended Order in substantially the form set forth at Exhibit A hereto.

## BACKGROUND

**I.   Attempted Sale**

9. The Debtors commenced these Chapter 11 Cases with the intent and expectation that they would effectuate a sale of substantially all of their assets (collectively, the "Assets") as a going concern to CTI Foods Holding Co., LLC ("CTI") or another higher bidder. The DIP Facility was conditioned on the Debtors effectuating that sale process.

10. The Court entered the Interim Order [Docket No. 20] on February 26, 2014 and the Final DIP Order [Docket No. 167] on May 20, 2014, respectively. Since filing the DIP Motion, the Debtors and the DIP Agent have entered into two amendments to the DIP Credit Agreement. The First Amendment, dated February 21, 2014, addressed an issue in the DIP Credit Agreement with respect to the calculation of certain of the Debtors' advance rates. The Second Amendment, dated March 20, 2014, adjusted advance rates and extended certain sale milestones and covenants, consistent with the terms of the proposed sale.

11. When CTI and the Debtors failed to enter into an asset purchase agreement after CTI determined that it no longer desired to purchase the Assets, the Debtors executed an alternative asset purchase agreement (the "APA") with Raging Bull Acquisition Company, LLC ("Raging Bull") on March 14, 2014 [Docket No. 137] pursuant to which Raging Bull agreed to purchase the Assets and serve as the stalking horse bidder in connection with the Debtors' proposed sale thereof.

12. However, subsequent to the execution of the APA, Raging Bull determined not to purchase of the Assets or otherwise meet its obligations under the APA. At this time, Raging Bull and the Debtors dispute the propriety of Raging Bull's failure to honor the terms of the APA.

13. The DIP Credit Agreement required the Debtors to obtain entry of a sale order for the Assets by April 21, 2014 and achieve a closing by April 23, 2014 [DIP Credit Agreement, Section 6.21(c)(vii)]. Neither of those conditions were met. Thereafter, on April 25, 2014, the DIP Agent issued notices of default and a Carve Out Trigger Notice, and informed the Debtors that it was unwilling to extend further loans to the Debtors. The DIP Lenders have made certain discretionary advances to the Debtors subsequent to April 25, 2014, but have ceased financing the Debtors at a level necessary for the Debtors to operate as a going concern.

14. Therefore the Debtors have ceased the majority of their operations and reduced their active work force to approximately 67 employees. The employees which remain employed by the Debtors are focused on selling and shipping the Debtors' inventory to customers, collecting receivables, preserving and protecting equipment and Assets and maintaining the Debtors' leased facilities.

II. **Wind down**

15. At the time of the Default Notice and the corresponding failure of Raging Bull to close, the Debtors were facing possible conversion to chapter 7, which would lead to almost certain administrative insolvency with respect to chapter 11 administrative expenses. After evaluating their options and discussing the possible outcomes of these options with representatives of the DIP Agent, the Committee, the Debtors' union and other parties in interest, the Debtors determined that an orderly wind down of its business, together with a short term

effort to find a turnkey buyer for its three facilities, could be a more favorable outcome than immediate conversion to chapter 7.

16. In order for a wind down to occur in chapter 11, the Debtors believed that the wind down required four components: (i) protection for all going forward costs of the wind down as part of the Carve Out, ahead of the DIP Lenders' rights to proceeds of Collateral, to ensure that any administrative insolvency is not deepened as a result of the wind down; (ii) an increase in the value available to creditors other than the DIP Lenders, to mitigate any administrative insolvency that may already exist, with such mitigation being greater than would occur if the case converted to chapter 7; (iii) payment of the accrued but unpaid vacation pay owed to the Debtors' workforce which will come due during the wind down; and (iv) a path to recoveries for the DIP Lenders that projects to be greater than their net recovery if these cases convert to chapter 7.

17. The relief sought herein, together with related motions concerning the conduct of the wind down filed at the same time as the Motion, achieve these results. The proposed Amended Order and the Third Amendment To Senior Secured, Superpriority Debtor-In-Possession Credit Agreement (the "Third DIP Amendment") provide protection for all going forward expenses by including them in the Carve Out. The Debtors are confident they can manage their expenses going forward to ensure that no administrative expenses are incurred in the ordinary course of the wind down that will fall outside the new Approved Budget. The revised Approved Budget includes funds for payment of the accrued vacation pay that will come due to the Debtors' employees during the wind down.

18. In addition, the Third DIP Amendment provides for an almost certain increase in recoveries to administrative claimants (and possibly priority claimants), through an

increase in assets available to these constituents. Specifically, the Third DIP Amendment provides that "the DIP Agent and Lenders waive any and all interests they have, whether pre-petition or post-petition, in all Commercial Tort Claims (other than Commercial Tort Claims against Raging Bull Acquisition Company LLC and its affiliates (including without limitation Oak Tree Capital Management, L.P.)), whether provided in the Loan Documents, the DIP Orders, the Pre-Petition Loan Documents or otherwise; <u>provided</u>, <u>however</u>, that Agent and Lenders shall be entitled to payment in full of any amounts owed by any Guarantors under their Facility Guaranties prior to any recovery by the Debtors' estates on any Commercial Tort Claims (or other claims) against any Guarantors" (see Third DIP Amendment, Section 1(e)).

19. In addition, the Third DIP Amendment Provides a priority in Bankruptcy Recoveries to administrative claimants and priority claimants (other than the DIP Lenders) by providing the first $1 million in net Bankruptcy Recoveries to such parties, as well as 50% of all Bankruptcy Recoveries in excess of $1 million (see Third DIP Amendment, Section 1(f)). The Debtors currently project that the unpaid administrative claims are in the range of $7-8 million (excluding those included in the current Carve Out). The administrative claim of the DIP Lenders is projected to be two to four times that amount, so that agreed-to split on Bankruptcy Recoveries will enable administrative claimants other than the DIP Lenders to recover a much greater amount than they would absent the concessions contained in the Third DIP Amendment.

20. This Motion is coupled with other relief designed to facilitate the proposed orderly wind down and enhance the recovery to the DIP Agent and DIP Lenders. In particular, the Debtors are filing motions requesting approval of an amended engagement agreement with the Debtors' investment banker, City Capital Advisors, LLC ("<u>City Capital</u>"), and the retention of the Tiger Remarketing Services ("<u>Tiger</u>") to market and liquidate certain of the Assets.

21. The Debtors seek to retain Tiger and amend the terms of City Capital's engagement to maximize value for the Debtors' physical plants and equipment. City Capital is now focused on marketing the Debtors' physical plants as "turn-key" protein processing facilities, complete with all equipment necessary to operate a large scale operation. The Debtors will seek to sell each of their three facilities in this manner, subject to the consent of the real property and capital lessors.

22. Tiger is being separately retained to sell all other assets, including intellectual property, excess inventory (including packaging, proteins and spices) and, if City Capital is unable to find a turnkey buyer that wishes to purchase and/or assume leases with respect to certain of the Debtors' machinery and equipment, aid in liquidating those materials as well.

23. In addition to the above strategy concerning their fixed assets, the Debtors, with the aid of their financial advisors, have negotiated value maximizing arrangements with the Debtors' former customers which will permit the Debtors to recover substantial portions of the Debtors' existing accounts receivable. The Debtors believe that converting these chapter 11 cases to chapter 7 cases would destroy the value created in these arrangements and would render millions of dollars of accounts receivable uncollectable.

24. The Amended Order and the Third DIP Amendment are presented by this Motion with the support of the DIP Agent and the Committee, each of which believe the Amended Order represents the best course of action, given the unfortunate circumstances the Debtors now confront.

## SUMMARY OF MATERIAL AMENDMENTS TO DIP FACILITY

25. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following are the material provisions of the Amended Order which differ from the Final DIP Order:

| | |
|---|---|
| **Approved Budget** *Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-2(a)(ii)* | The Budget is replaced by the Budget attached to the Third DIP Amendment, which Budget is projected to cover the entire wind down of the Debtors' affairs. (Third DIP Amendment § 1(c) and (d)) |
| **Milestones** *Bankruptcy Rule 4001(c)(1)(B)(vi)* | The DIP Borrowers shall comply with the following covenants: On or before May 15, 2014, the Debtors shall file a motion under Section 365 of the Bankruptcy Code requesting extension of the date on which the Debtors must assume or reject leases to 210 days after the entry of the order for relief, with an order so extending that deadline to be have been entered by the Bankruptcy Court on or before May 28, 2014. The Debtors shall engage a liquidation firm satisfactory to the Agent to conduct a sale of all or substantially all of the Borrowers' assets on or before May 15, 2014, and the Debtors shall have obtained an order of the Bankruptcy Court approving such engagement on or before May 28, 2014 (Third DIP Amendment ¶¶ (j) and (k), amending DIP Credit Agreement Sections 6.21(b) and (d). |

## BASIS FOR RELIEF REQUESTED

26. Paragraph 49 of the Final DIP Order allows the Debtors to amend the DIP Documents in various ways absent Court approval, but not the authority to amend the Final DIP Order. The Amended Order and the Third DIP Amendment implicate the Final DIP Order in its treatment of right to proceeds of Commercial Tort Claims and Bankruptcy Recoveries as well as the terms of the Carve Out. For that reason entry of the Amended Order is requested.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

27. To implement the foregoing immediately, the Debtors request that the Bankruptcy Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

28. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the DIP Agent; and (iii) counsel to the Committee. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Amended Order granting the relief requested in this Motion and such other and further relief as is just and proper.

Dated: May 15, 2014
Wilmington, Delaware

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Andrew L. Magaziner*
M. Blake Cleary (No. 3614)
Andrew L. Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

01:15463318.2

WINSTON & STRAWN LLP

Daniel J. McGuire
Gregory M. Gartland
Caitlin S. Barr
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Counsel for Debtors and
Debtors in Possession*