# EXHIBIT A

**Proposed Amended Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------- x

In re                                                          :     Chapter 11
                                                               :
QUANTUM FOODS, LLC, *et al.*,[1]                               :     Case No.  14-10318 (KJC)
                                                               :
            Debtors.                                           :     Jointly Administered
                                                               :
                                                               :     **Ref. Docket Nos. 12, 167 & ___**
------------------------------------------------------------- x

### FIRST AMENDED ORDER AMENDING FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPER PRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY, PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014

This matter having come before the Court on May 21, 2014 upon the motion filed on May 15, 2014 (the "Motion") of Quantum Foods, LLC, Quantum Foods 213-D, LLC, Quantum Culinary, LLC, GDC Logistics, LLC, and Choice One Foods, LLC, each as a debtor and debtor-in-possession (collectively, the "Debtors"), requesting entry of a First Amended Order Amending Final Order (1) Authorizing Post-Petition Financing, (2) Granting Liens and Providing Super Priority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (4) Modifying the Automatic Stay, Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 [Docket No. ___];

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Quantum Foods, LLC (9437); Quantum Foods 213-D, LLC (1862); Quantum Culinary, LLC (1302); GDC Logistics, LLC (1997); Choice One Foods, LLC (9512).  The Debtors' mailing address is c/o Quantum Foods, LLC, 750 South Schmidt Road, Bolingbrook, Illinois 60440.

WHEREAS, On March 20, 2014 this Court entered its *Final Order (1) Authorizing Post-Petition Financing, (2) Granting Liens and Providing Super Priority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (4) Modifying the Automatic Stay, Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014* [Docket No. 167] (the "Final DIP Order");[2]

WHEREAS, by the Motion, the Debtors have requested the entry of this order to implement an amendment to the DIP Credit Agreement pursuant to the terms of the Third Amendment To Senior Secured, Superpriority Debtor-In-Possession Credit Agreement (the "Third DIP Amendment"), a copy of which is attached hereto as Exhibit A, through an amendment to the Final DIP Order;

WHEREAS, upon the record set forth by Debtors, including the Motion, the filings and pleadings in these cases, the record of the proceedings heretofore held before this Court with respect to the Motion, and sufficient cause appearing therefor and after due deliberation, the Court hereby incorporates by reference all findings in the Final DIP Order,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1.      The Debtors have prepared and delivered an Approved Budget, (a copy of which is attached to the Third DIP Amendment as Exhibit A), to the DIP Agent and the Committee, which Approved Budget shall replace the existing Approved Budget commencing on April 25, 2014.

---

[2]     Capitalized terms used in this First Amended Order but not defined herein shall have the meanings ascribed to such terms in the Final DIP Order.

2.      The Third DIP Amendment is approved in all respects.  In the event of any conflict between the terms of the Final DIP Order and the Third DIP Amendment, the terms of the Third DIP Amendment shall control.

3.      All expenses incurred pursuant to the Approved Budget on or after April 25, 2014 through the earlier of (i) the final date of the Approved Budget and (ii) the date three Business Days after delivery of a Trigger Notice, shall be included in the Carve Out as defined in paragraph 25 of the Final DIP Order. The Transaction Fee, Compensation and Costs (as defined in their respective engagement letters) and any other reimbursable expenses payable to Tiger Capital Group, LLC and its affiliates and City Capital Advisors under their respective agreements shall be deemed an expense payable from the first gross proceeds of any applicable disposition of the Debtors' assets.

4.      In addition to funding the items in the Approved Budget, the Agent and Lenders shall fund a $45,000 advance to be used by the Creditors' Committee to fund the Creditors' Committee's pursuit of Bankruptcy Recoveries and, subject to the terms of the Third DIP Amendment, secured by and repayable to the DIP Lenders out of the first proceeds (net of costs and expenses) of the Bankruptcy Recoveries.

5.      Notwithstanding anything to the contrary in the Loan Documents, the DIP Orders, the Pre-Petition Loan Documents or otherwise: (i) the DIP Agent and DIP Lenders shall not have any interest in Commercial Tort Claims (other than Commercial Tort Claims against Raging Bull Acquisition Company LLC and its affiliates (including without limitation Oak Tree Capital Management, L.P.)); provided, however, that the DIP Agent and DIP Lenders shall be entitled to payment in full of any amounts owed by any DIP Guarantors under their Facility Guaranties prior to any recovery by the Debtors' estates on any Commercial Tort Claims (or

other claims) against any DIP Guarantors; and (ii) all Bankruptcy Recoveries shall be distributed as set forth in Section 1.(f) of the Third DIP Amendment.

6.      Except as expressly set forth in paragraph 5, above, the DIP Agent and the DIP Lenders shall continue to be entitled to all of the same rights, liens, priorities and protections provided for under the Final DIP Order, as amended by this First Amendment to Final DIP Order, and the DIP Loan Documents.

7.      Notwithstanding any other agreements to the contrary, including without limitation the Second Stipulation Between the Official Unsecured Creditors Committee and Crystal Financial LLC, Agent for the Pre-Petition Lenders and the DIP Lenders, for Extension of Challenge Period [Docket No. 301], the Challenge Period Termination Date shall be the date of entry of this order and no Challenge Proceeding shall be brought, and therefore the Prepetition Agent and the Prepetition Lenders are entitled to the benefit of all the releases contained in the Final DIP Order, including, without limitation, the Debtors' Stipulations contained in Finding E thereof.

8.      The release provided in Section 9 of the Third DIP Amendment is hereby approved and effective as of the date of the entry of this order, and shall be binding on the Debtors, their estates, the Committee and their successors.

9.      The terms and provisions of this First Amendment to Final DIP Order shall be valid and binding upon Debtors, all creditors of Debtors and all other parties-in-interest from and after the date of the entry of this First Amendment to Final DIP Order by this Court. The terms and provisions of this First Amendment to Final DIP Order shall be effective immediately upon entry of this First Amendment to Final DIP Order pursuant to Bankruptcy Rules 6004(g) and 7062.

10.     Except as expressly set forth in this First Amendment to Final DIP Order, all of the terms, conditions and provisions of the Final DIP Order and the DIP Loan Documents are hereby ratified and reaffirmed in all respects and shall remain in full force and effect.

Dated: May __ 2014

_____
Kevin J. Carey
United States Bankruptcy Judge

## Exhibit A

**THIRD DIP AMENDMENT**

## THIRD AMENDMENT
## TO SENIOR SECURED, SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT

**THIS THIRD AMENDMENT TO SENIOR SECURED, SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT** (this "Amendment"), is dated as of May *15*, 2014 by and among (i) **Quantum Foods, LLC**, as debtor and debtor-and-possession (the "Lead Borrower"), (ii) the other Borrowers party hereto, each as a debtor and debtor-in-possession (together with the Lead Borrower, the "Borrowers"), (iii) the lenders party hereto (the "Lenders"), and (iv) **Crystal Financial LLC**, in its capacities as administrative agent and collateral agent (in such capacities, the "Agent") under the DIP Credit Agreement (as defined below).

## W I T N E S S E T H:

**WHEREAS**, the Borrowers and certain Guarantors (such Guarantors collectively with the Borrowers, the "Loan Parties"), the Lenders and the Agent are party to a certain Senior Secured, Superpriority Debtor-in-Possession Credit Agreement dated as of February 20, 2014 (as amended and in effect, the "DIP Credit Agreement"); and

**WHEREAS,** certain Events of Default have occurred and are continuing under the DIP Credit Agreement and as a result thereof, pursuant to a notice dated April 25, 2014 (the "Termination Notice") from the Agent to the Loan Parties, among other things, the Agent notified the Loan Parties that as a result of the occurrence of such Events of Default, the Agent declared the Revolving Commitments of each Lender under the DIP Credit Agreement to make Loans to be terminated, and advised the Loan Parties that if any further Loans were to be made, the Lenders would do so only if the Lenders, in their sole and exclusive discretion, determined to do so;

**WHEREAS**, as a result of the receipt of the Termination Notice, the Borrowers have been forced to cease their ordinary course operations; and

**WHEREAS**, the Agent has notified the Loan Parties from time to time of the willingness of the Lenders, in their sole discretion, to make certain Loans to the Borrowers to pay certain specified expenses of the Borrowers; and

**WHEREAS,** the Borrowers are in the process of liquidating the Collateral subject to and in accordance with any conditions which may be imposed by the Bankruptcy Court, and notwithstanding the fact that the Agent and the Lenders have no obligation to make further Loans or other extensions of credit under the DIP Credit Agreement, the Lenders desire to make certain Loans to the Borrowers to pay certain specified expenses of the Borrowers from time to time in accordance with the terms of the Approved Budget in order to allow the Borrowers to maximize the net recovery from the liquidation of the Collateral; and

**WHEREAS**, notwithstanding the fact that the Agent and the Lenders currently have no obligation to make further Loans or other extensions of credit under the DIP Credit Agreement, the Borrowers, the Lenders and the Agent desire to amend certain provisions of the DIP Credit Agreement as provided herein to clarify the basis upon which the Agent and the Lenders shall be obligated to make Loans and other extension of credit to the Borrowers from time to time; and

**WHEREAS**, on April 25, 2014, the Agent delivered the Carve Out Trigger Notice to the Lead Borrower, its lead counsel, the U.S. Trustee and lead counsel to the Creditors' Committee; and

**WHEREAS**, the Agent and the Lenders have agreed, subject to the terms and conditions hereof, to withdraw the Carve Out Trigger Notice and to reinstate the Professional Expense Carve Out and to modify the Professional Expense Carve Out as set forth herein; and

**WHEREAS**, the Borrowers, the Lenders and the Agent desire to amend certain other provisions of the DIP Credit Agreement as provided herein and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the premises, the covenants and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Borrowers, the Lenders and the Agent hereby agree as follows:

1.    **AMENDMENTS TO DIP CREDIT AGREEMENT.** The provisions of the DIP Credit Agreement are hereby amended as follows:

    a.    The DIP Credit Agreement is hereby amended by deleting the term "Borrowing Base" and all references to Loans to be made and Letters of Credit to be issued based on the Borrowing Base. Any Credit Extensions made pursuant to the DIP Credit Agreement shall be made solely in accordance with the Approved Budget.

    b.    Each of the Borrowers, the Agent and the Lenders acknowledge and agree that the budget attached hereto as Exhibit A and incorporated by reference herein shall be deemed the "Approved Budget" as of the date hereof unless replaced in accordance with Section 7.15 of the DIP Credit Agreement.

    c.    Prior to an Event of Default occurring after the date hereof, the Agent and Lenders shall fund all amounts set forth in the Approved Budget.

    d.    In addition to funding in the Approved Budget, the Agent and Lenders shall fund a $45,000 advance to be used by the Creditors' Committee to fund the Creditors' Committee's pursuit of Bankruptcy Recoveries and, subject to 1(e), such advance shall be secured by and repayable to the Lenders out of the first proceeds (net of costs and expenses) of the Bankruptcy Recoveries.

    e.    The Agent and Lenders waive any and all interests they have, whether pre-petition or post-petition, in all Commercial Tort Claims (other than Commercial Tort Claims against Raging Bull Acquisition Company LLC and its affiliates (including without limitation Oak Tree Capital Management, L.P.)), whether

2

provided in the Loan Documents, the DIP Orders, the Pre-Petition Loan Documents or otherwise; provided, however, that Agent and Lenders shall be entitled to payment in full of any amounts owed by the Guarantors under the Facility Guaranty and/or by the limited guarantors pursuant to the Amended and Restated Limited Guaranty prior to any recovery by the Debtors' estates on any Commercial Tort Claims (or other claims) against any Guarantors.

f.    Bankruptcy Recoveries shall be distributed as follows:

    i)    First, $45,000 to the Agent to provide for the repayment of the $45,000 described in section 1(d);

    ii)    Second, to pay any accrued fees and expenses of pursuing Bankruptcy Recoveries;

    iii)    Third, to the Debtors' estates for the benefit of administrative, priority and general unsecured creditors other than Agent and Lenders until the estates have received One Million Dollars ($1,000,000); and

    iv)    Fourth, 50% of all further Bankruptcy Recoveries to the Agent and Lenders and 50% to the Debtors' estates for the benefit of administrative, priority and general secured creditors other than Agent and Lenders.

g.    Each of the Borrowers, the Agent and the Lenders acknowledge and agree that on and after the date hereof, all Borrowing Base Certificates and related Collateral reporting requirements set forth in Section 6.02 of the DIP Credit Agreement shall be replaced with the requirements set forth in Exhibit B attached hereto and incorporated by reference herein.

h.    The DIP Credit Agreement is hereby amended by deleting Sections 6.01(a), (b) and (c) thereof in their entirety.

i.    By their execution below, the Agent and the Lenders hereby confirm the withdrawal of the Carve Out Trigger Notice and the reinstatement of the Professional Expense Carve Out under the DIP Credit Agreement.

j.    The definition of "Professional Expense Carve Out" under the Credit Agreement is hereby replaced in its entirety with the following:

"Professional Expense Carve Out" shall mean a carve out for the following expenses: (i) all fees required to be paid to the Clerk of the Bankruptcy Court; (ii) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c); (iii) all accrued and unpaid fees, disbursements, costs and expenses incurred by Case Professionals to the extent allowed at any time, through the date of service by the Agent of a Carve Out Trigger Notice, as limited by the respective Approved Budget amounts for each Case Professional or category of Case Professional through the date of service of said Carve Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice less the amount of pre-petition retainers received by such Case Professionals; (iv) all accrued amounts set forth in the Approved Budget,

3

through and including the earlier of (A) the last date of such Approved Budget and (B) three Business Days after delivery of a Carve Out Trigger Notice; (v) all monthly fees and expense reimbursement due to Tiger Capital Group, LLC ("Tiger") and City Capital Advisors ("City Capital") (or such other firms retained by the Borrowers and satisfactory to the Agent) relating to the disposition of the Borrowers' assets pursuant to their respective retention agreements with the Borrowers as approved by the Bankruptcy Court (or as modified with the consent of Agent); and (vi) all accrued and unpaid fees, disbursements, costs and expenses incurred by the Case Professionals after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed (x) the lesser of (A) $150,000 or (B) the remaining amount of such fees, disbursements, costs and expenses as set forth in the Approved Budget, less (y) the amount of pre-petition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (iii) above.   The Transaction Fee, Compensation and Costs (as defined in their respective retention agreements) and any other reimbursable expenses payable to Tiger and City Capital under their respective retention agreements shall be deemed an expense payable from the first gross proceeds of any applicable disposition of the Borrowers' assets. The Professional Expense Carve-Out shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals.

k.      Each of the Borrowers, the Agent and the Lenders hereby acknowledge and agree that any so called "turn-key sale" consummated by the Borrowers with respect to any of their locations, whether such sale is arranged by City Capital or otherwise, shall be subject to the approval of the Agent in its sole discretion.

l.      Section 6.21(b) of the DIP Credit Agreement is hereby deleted in its entirety and the following is substituted in its stead:

"(b)    On or before May 15, 2014, the Borrowers shall have filed a motion under Section 365 of the Bankruptcy Code requesting extension of the date on which the Borrowers must assume or reject leases to 210 days after the entry of the order for relief, with an order so extending that deadline to be have been entered by the Bankruptcy Court on or before May 28, 2014; provided that, in the event that the Borrowers shall not have filed such motion on or before May 15, 2014, the Agent may do so on the Borrowers behalf and the Borrowers hereby grant the Agent a power of attorney to so file such motion.  The Borrowers may not, without the prior written consent of the Agent, assume, assume and assign, or reject leases."

m.      Section 6.21of the DIP Credit Agreement is hereby amended by adding the following clause (d) at the end thereof:

"(d)    The Borrowers shall have engaged a liquidation firm satisfactory to the Agent to conduct a sale of all or substantially all of the Borrowers' assets on or before May 15, 2014, and the Borrowers shall have obtained an order of the Bankruptcy Court approving such engagement on or before May 28, 2014."

n.      Section 8.01(b) is hereby deleted in its entirety and the following is substituted in its stead:

4

""(b)  <u>Specific Covenants</u>. Any Loan Party fails to perform or observe any term, covenant or agreement contained in any of Sections <u>6.01</u>, <u>6.02</u>, <u>6.03</u>, <u>6.05</u>, <u>6.07</u>, <u>6.10</u>, <u>6.11</u>, <u>6.12</u>, <u>6.13</u>, <u>6.21</u> (other than <u>6.21(c)(vi)</u> or <u>(vii)</u>) or <u>ARTICLE VII</u>; or"

o.     Each of <u>Sections 8.01(j)</u>, <u>8.01(l)</u>, <u>8.01(n)</u> and <u>8.01(s)</u> is hereby deleted in its entirety and "<u>[Reserved]</u>" is substituted in its stead.

2.     **COSTS AND EXPENSES.**  Each Borrower agrees that the Agent may charge the Loan for all reasonable fees, costs and expenses incurred by the Agent in connection with this Amendment, including, without limitation, reasonable legal fees and costs (and without duplication, the allocated cost of in-house legal counsel), as set forth in the DIP Credit Agreement and the DIP Orders.

3.     **CONDITIONS TO EFFECTIVENESS.**  This Amendment shall become effective on the date (the "<u>Third Amendment Effective Date</u>") upon which each of the following have occurred:

a.     the Agent shall have received one or more counterparts of this Amendment, duly executed, completed and delivered by the Agent, each Lender and each Borrower; and

b.     Approval by the Bankruptcy Court.

4.     **NO OTHER AMENDMENTS; ACKNOWLEDGMENT OF OBLIGATIONS.**  Except for the amendments set forth in <u>Section 2</u> of this Amendment, the DIP Credit Agreement and the other Loan Documents shall remain unchanged and in full force and effect.  Nothing in this Amendment is intended, or shall be construed, to constitute a novation or an accord and satisfaction of any Borrower's Obligations under or in connection with the DIP Credit Agreement and any other Loan Document or to modify, affect or impair the perfection or continuity of the Agent's security interest in, (on behalf of itself and Lenders) security titles to or other liens on any Collateral for the Obligations.

5.     **REPRESENTATIONS AND WARRANTIES.**  Each Borrower hereby represents and warrants to the Agent and the Lenders as follows:

a.     **Representations and Warranties.**  Each Borrower hereby represents and warrants that, after giving effect to this Amendment, each of such Borrower's representations and warranties contained in the Loan Documents is true and correct on and as of the date hereof, except for Section 5.07 of the DIP Credit Agreement and except for any representation and warranty that relates by its terms only to a specified date (in which case, it shall be true on and as of such date).

b.     **Binding Effect of Documents.**  This Amendment and the other Loan Documents have been duly executed and delivered to the Agent and the Lenders by such Borrower and are in full force and effect, as modified hereby. This Amendment constitutes the legal, valid and binding obligation of each Borrower enforceable in accordance with its terms.  Each Guarantor hereby confirms that the Guaranty to

which it is a party will continue to guarantee to the fullest extent possible, the Guaranteed Obligations (as defined in such Guaranty) and ratifies all the provisions of the Guaranty and all other Loan Documents to which it is a party.

c.   **No Conflict, Etc.**  The execution, delivery and performance of this Amendment by such Borrower will not violate any law, rule, regulation or order or contractual obligation or organizational document of such Borrower and will not result in, or require, the creation or imposition of any lien, claim or encumbrance of any kind on any of its properties or revenues.

6.   **ADVICE OF COUNSEL.**   Each of the parties represents to each other party hereto that it has discussed this Amendment with its counsel.

7.   **SEVERABILITY OF PROVISIONS.**  In case any provision of or obligation under this Amendment shall be invalid, illegal or unenforceable in any applicable jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

8.   **COUNTERPARTS.**  This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one and the same instrument.  Delivery of an executed signature page of this Amendment by facsimile transmission or electronic transmission shall be as effective as delivery of a manually executed counterpart hereof.

9.   **RELEASE.**

a.   In consideration of the agreements of the Agent and the Lenders contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Borrower, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges the Agent and each Lender and its respective successors and assigns, and its respective present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (the Agent, the Lenders and all such other persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which either Borrower or any of its respective successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the Third Amendment Effective Date, including, without limitation, for or

6

on account of, or in relation to, or in any way in connection with the DIP Credit Agreement or any of the other Loan Documents or transactions thereunder or related thereto.

b.      Each Borrower understands, acknowledges and agrees that its release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

c.      Each Borrower agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

10.    **GOVERNING LAW.**  THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE BANKRUPTCY CODE AND THE LAWS OF THE STATE OF NEW YORK.

11.    **ENTIRE AGREEMENT.**  The DIP Credit Agreement and the other Loan Documents as and when amended through this Amendment embodies the entire agreement between the parties hereto relating to the subject matter thereof and supersedes all prior agreements, representations and understandings, if any, relating to the subject matter thereof.

12.    **NO STRICT CONSTRUCTION, ETC.**  The parties hereto have participated jointly in the negotiation and drafting of this Amendment. In the event an ambiguity or question of intent or interpretation arises, this Amendment shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Amendment. Time is of the essence for this Amendment.

**[Signature Page to Follow]**

**IN WITNESS WHEREOF,** the parties hereto have caused this Third Amendment to Senior Secured, Superpriority Debtor-in-Possession Credit Agreement to be duly executed and delivered as of the day and year specified at the beginning hereof.

AGENT AND LENDERS:

CRYSTAL FINANCIAL LLC, as Agent and as a Lender

By: _____
Name: Christopher A. Arnold
Title: Senior Managing Director

SOLAR CAPITAL LTD., as a Lender

By: _____
Name:
Title:

DA FUNDING, LLC, as a Lender

By: _____
Name:
Title:

**IN WITNESS WHEREOF,** the parties hereto have caused this Third Amendment to Senior Secured, Superpriority Debtor-in-Possession Credit Agreement to be duly executed and delivered as of the day and year specified at the beginning hereof.

<u>AGENT AND LENDERS</u>:

CRYSTAL FINANCIAL LLC, as Agent and as a Lender

By: _____
Name: Christopher A. Arnold
Title: Managing Director

SOLAR CAPITAL LTD., as a Lender

By: _____
Name:
Title:

DA FUNDING, LLC, as a Lender

By: _____
Name: Robert DeAngelis
Title: Executive Managing Director

[Signature Page to Third Amendment to DIP Credit Agreement]

BORROWERS:

QUANTUM FOODS, LLC, as Lead Borrower and
as a Borrower, debtor and debtor-in-possession

By: _____
Name: Edgar B. Reilly
Title:   Chief Administrative Officer

QUANTUM FOODS 213-D, LLC, as a Borrower,
debtor and debtor-in-possession

By: _____
Name: Edgar B. Reilly
Title:   Chief Administrative Officer

QUANTUM CULINARY, LLC, as a Borrower,
debtor and debtor-in-possession

By: _____
Name: Edgar B. Reilly
Title:   Chief Administrative Officer

GDC LOGISTICS, LLC, as a Borrower, debtor and
debtor-in-possession

By: _____
Name: Edgar B. Reilly
Title:   Chief Administrative Officer

CHOICE ONE FOODS, LLC, as a Borrower,
debtor and debtor-in-possession

By: _____
Name: Edgar B. Reilly
Title:   Chief Administrative Officer

GUARANTORS:

NORTHSTAR FOODS (QRME), LLC, as a
Guarantor, debtor and debtor-in-possession

By: _____
Name:
Title:

QUANTUM ROSA MYSTIC ENTERPRISES,
LLC, as Guarantor, debtor and debtor-in-possession

By: _____
Name:
Title:

The undersigned hereby acknowledge receipt of the foregoing amendment and hereby confirms that the Amended and Restated Limited Guaranty dated January 2, 2014 to which it is a party is ratified and confirmed in all respects:


By: _____

    Edward B. Bleka


By: _____

    Jane Bleka


BLEKA PROPERTIES, LLC


By: _____

Name:

Title:

EXHIBIT A

APPROVED BUDGET

**Quantum Foods, LLC**
**Wind-Down Budget: Cash Flow Forecast**

| Week:<br>Actual / Forecast (A / F):<br>Week-Ended: | 1<br>F<br>2-May | 2<br>F<br>9-May | 3<br>F<br>16-May | 4<br>F<br>23-May | 5<br>F<br>30-May | 6<br>F<br>6-Jun | 7<br>F<br>13-Jun | 8<br>F<br>20-Jun | 9<br>F<br>27-Jun | 10<br>F<br>4-Jul | 11<br>F<br>11-Jul | 12<br>F<br>18-Jul | 13<br>F<br>25-Jul | 14<br>F<br>1-Aug | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Disbursements:** | | | | | | | | | | | | | | | |
| Pre 4/25 Admin Claims | (1,093) | (25) | (2,094) | (273) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (98) | - | (3,686) |
| Payroll & Related | - | (915) | (302) | (727) | (86) | (79) | (199) | (88) | (81) | (196) | (3) | (3) | (3) | (95) | (2,871) |
| Facility Related | (162) | (519) | (32) | (32) | (32) | (420) | (157) | (157) | (32) | (420) | (20) | (20) | (20) | (20) | (2,043) |
| Customer-Related, Insurance & Other | (187) | (267) | (840) | (115) | (154) | (215) | (28) | (28) | (28) | (59) | (20) | (20) | (20) | (20) | (1,999) |
| Liquidator Costs | - | - | - | - | - | - | - | - | - | (701) | - | - | - | - | (701) |
| Professional Fees | (786) | - | (376) | (30) | (1,563) | - | - | - | - | (848) | - | - | - | (303) | (3,906) |
| | | | | | | | | | | | | | | | - |
| **Total disbursements** | **(2,227)** | **(1,726)** | **(3,644)** | **(1,178)** | **(1,860)** | **(739)** | **(409)** | **(297)** | **(165)** | **(2,249)** | **(68)** | **(68)** | **(138)** | **(438)** | **(15,206)** |
| **Asset recoveries:** | | | | | | | | | | | | | | | |
| Accounts Receivable | - | 4,646 | 4,400 | 2,577 | 5,377 | 4,547 | 177 | 177 | 177 | 177 | 177 | - | - | - | 22,429 |
| Inventory | - | - | - | 600 | 600 | 600 | 600 | 600 | 600 | 600 | - | - | - | - | 4,203 |
| Machinery & Equipment | - | - | - | - | - | - | - | - | - | 7,100 | - | - | - | - | 7,100 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | 108 | 108 |
| | | | | | | | | | | | | | | | - |
| **Total asset recoveries** | **-** | **4,646** | **4,400** | **3,177** | **5,977** | **5,147** | **777** | **777** | **777** | **7,877** | **177** | **-** | **-** | **108** | **33,840** |
| **Net cash flow** | **(2,227)** | **2,920** | **756** | **1,999** | **4,117** | **4,408** | **368** | **480** | **612** | **5,628** | **109** | **(68)** | **(138)** | **(330)** | **18,634** |
| **Net cash flow - cumulative** | **$ (2,227)** | **$ 693** | **$ 1,448** | **$ 3,448** | **$ 7,565** | **$ 11,973** | **$ 12,341** | **$ 12,821** | **$ 13,433** | **$ 19,061** | **$ 19,170** | **$ 19,102** | **$ 18,965** | **$ 18,634** | |
| **DIP roll-forward** | | | | | | | | | | | | | | | |
| Starting balance | - | 45,208 | 42,288 | 41,533 | 39,533 | 35,416 | 31,008 | 30,640 | 30,160 | 29,548 | 23,920 | 23,811 | 23,879 | 24,016 | - |
| Plus: disbursements | | 1,726 | 3,644 | 1,178 | 1,860 | 739 | 409 | 297 | 165 | 2,249 | 68 | 68 | 138 | 438 | 12,978 |
| Less: recoveries | | (4,646) | (4,400) | (3,177) | (5,977) | (5,147) | (777) | (777) | (777) | (7,877) | (177) | - | - | (108) | (33,840) |
| **Ending balance** | | **42,288** | **41,533** | **39,533** | **35,416** | **31,008** | **30,640** | **30,160** | **29,548** | **23,920** | **23,811** | **23,879** | **24,016** | **24,347** | **24,347** |
| **Professional fees outstanding** | **2,152** | **2,359** | **2,146** | **2,283** | **848** | **925** | **998** | **1,065** | **1,123** | **323** | **368** | **412** | **450** | **-** | **-** |
| **Administrative claims outstanding** | **12,950** | **10,521** | **8,464** | **8,210** | **8,474** | **8,442** | **8,292** | **8,096** | **8,071** | **8,026** | **8,001** | **7,976** | **7,883** | **7,313** | **7,313** |

Notes:
Pre 4/25 Admin Claims payments are primarily comprised of payroll, benefits, and customer settlement payments.
Any retention payments included for insiders shall be payable only as a direct carve out by the lenders from collateral proceeds, and shall not be an obligation of the company directly.

PRIVILEGED AND CONFIDENTIAL

**Quantum Foods, LLC**
**Wind-Down Budget: Professional Fees**

| Week: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual / Forecast (A / F): | F | F | F | F | F | F | F | F | F | F | F | F | F | F | |
| Week-Ended: | 2-May | 9-May | 16-May | 23-May | 30-May | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | |
| **Professional fee accrual** | | | | | | | | | | | | | | | |
| Beginning balance | $ 2,725 | 2,152 | $ 2,359 | $ 2,146 | $ 2,283 | 848 | $ 925 | $ 998 | $ 1,065 | $ 1,123 | 323 | $ 368 | $ 412 | 450 | $ 2,725 |
| Accrual (post-4/25) | 213 | 208 | 163 | 168 | 128 | 78 | 73 | 68 | 58 | 48 | 45 | 44 | 38 | 28 | 1,355 |
| Payments | (786) | - | (376) | (30) | (1,563) | - | - | - | - | (848) | - | - | - | (303) | (3,906) |
| Application of retainer | - | - | - | - | - | - | - | - | - | - | - | - | - | (174) | (174) |
| Ending balance | 2,152 | 2,359 | 2,146 | 2,283 | 848 | 925 | 998 | 1,065 | 1,123 | 323 | 368 | 412 | 450 | - | - |
| **FTI** | | | | | | | | | | | | | | | |
| Beginning balance | 975 | 490 | 615 | 715 | 790 | 500 | 530 | 560 | 590 | 610 | 120 | 130 | 140 | 150 | 975 |
| Accrual (post-4/25) | 125 | 125 | 100 | 75 | 75 | 30 | 30 | 30 | 20 | 10 | 10 | 10 | 10 | 10 | 650 |
| Retainer application | - | - | - | - | - | - | - | - | - | - | - | - | - | (100) | (100) |
| Payments | (610) | - | - | - | (365) | - | - | - | - | (500) | - | - | - | (50) | (1,525) |
| Ending balance | 490 | 615 | 715 | 790 | 500 | 530 | 560 | 590 | 610 | 120 | 130 | 140 | 150 | - | - |
| **Winston & Strawn** | | | | | | | | | | | | | | | |
| Beginning balance | 650 | 695 | 740 | 765 | 785 | 150 | 165 | 180 | 190 | 200 | 60 | 70 | 80 | 90 | 650 |
| Accrual (post-4/25) | 45 | 45 | 25 | 20 | 15 | 15 | 15 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 250 |
| Retainer application | - | - | - | - | - | - | - | - | - | - | - | - | - | (35) | (35) |
| Payments | - | - | - | - | (650) | - | - | - | - | (150) | - | - | - | (65) | (865) |
| Ending balance | 695 | 740 | 765 | 785 | 150 | 165 | 180 | 190 | 200 | 60 | 70 | 80 | 90 | - | - |
| **Young Conaway** | | | | | | | | | | | | | | | |
| Beginning balance | 250 | 139 | 154 | 169 | 179 | 65 | 70 | 75 | 80 | 85 | 25 | 28 | 30 | 33 | 250 |
| Accrual (post-4/25) | 15 | 15 | 15 | 10 | 10 | 5 | 5 | 5 | 5 | 5 | 3 | 3 | 3 | 3 | 100 |
| Retainer application | - | - | - | - | - | - | - | - | - | - | - | - | - | (27) | (27) |
| Payments | (126) | - | - | - | (124) | - | - | - | - | (65) | - | - | - | (8) | (323) |
| Ending balance | 139 | 154 | 169 | 179 | 65 | 70 | 75 | 80 | 85 | 25 | 28 | 30 | 33 | 0 | - |
| **City Capital** | | | | | | | | | | | | | | | |
| Beginning balance | 60 | 10 | 10 | 10 | 10 | - | - | - | - | - | - | - | - | - | 60 |
| Accrual (post-4/25) | - | - | - | 30 | - | - | - | - | - | - | - | - | - | - | 30 |
| Payments | (50) | - | - | (30) | (10) | - | - | - | - | - | - | - | - | - | (90) |
| Ending balance | 10 | 10 | 10 | 10 | - | - | - | - | - | - | - | - | - | - | - |
| **UCC:  FA & Legal** | | | | | | | | | | | | | | | |
| Beginning balance | 635 | 640 | 645 | 274 | 279 | 25 | 30 | 35 | 40 | 45 | 25 | 30 | 34 | 37 | 635 |
| Accruals (post-4/25) | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 4 | 3 | 3 | 65 |
| Payments | - | - | (376) | - | (259) | - | - | - | - | (25) | - | - | - | (40) | (700) |
| Ending balance | 640 | 645 | 274 | 279 | 25 | 30 | 35 | 40 | 45 | 25 | 30 | 34 | 37 | - | - |
| **Claims & Noticing Agent / Other** | | | | | | | | | | | | | | | |
| Beginning balance | 50 | 53 | 55 | 58 | 60 | 13 | 15 | 18 | 20 | 23 | 13 | 15 | 18 | 20 | 50 |
| Accrual (post-4/25) | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 35 |
| Retainer application | - | - | - | - | - | - | - | - | - | - | - | - | - | (12) | (12) |
| Payments | - | - | - | - | (50) | - | - | - | - | (13) | - | - | - | (10) | (73) |
| Ending balance | 53 | 55 | 58 | 60 | 13 | 15 | 18 | 20 | 23 | 13 | 15 | 18 | 20 | - | - |

EXHIBIT B

REPORTING REQUIREMENTS

The following shall be delivered by the Borrowers on a daily basis, in each case in a form acceptable to the Agent:

1.      Disbursements made by line item tied to Approved Budget
2.      Disbursements made to each vendor
3.      Loan balance roll-forward
4.      Operating account roll-forward
5.      Checks and float roll-forward
6.      Collateral roll-forward by asset class