UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------- x
: 
*In re:* : Chapter 11
: 
QUANTUM FOODS, LLC, *et al.*,[1] : Case No. 14-10318 (KJC)
: 
Debtors. : Jointly Administered
: 
: Docket Ref. No. 330 and 393
------------------------------------------------------- x

**ORDER: (I) APPROVING THE AGENCY AND SALE AGREEMENT BETWEEN THE DEBTORS AND TIGER REMARKETING SERVICES WITH RESPECT TO THE SALE OF THE DEBTORS' MACHINERY, EQUIPMENT, FURNITURE AND FIXTURES; (II) APPROVING THE AGENCY AND SALE AGREEMENT BETWEEN THE DEBTORS AND TIGER CAPITAL GROUP, LLC WITH RESPECT TO THE SALE OF THE DEBTORS' INVENTORY AND INTELLECTUAL PROPERTY; (III) ESTABLISHING SALE PROCEDURES RELATING TO TURN-KEY ASSETS; (IV) AUTHORIZING ALTERNATIVE SALE AND LIQUIDATION OF ASSETS THROUGH PUBLIC AUCTION; AND (V) WAIVING ONE OR MORE OF THE INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2**

This matter coming before the Court on the motion (the "Motion")[2] of the above-captioned debtors (collectively, the "Debtors") for the entry of an order pursuant to sections 105, 327, 328, and 363 of title 11, United States Code (the "Bankruptcy Code"), Rules 2002, 2014, 6004 and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) approving the Agency and Sale Agreement (the "FF&E Agreement") between the Debtors and Tiger Remarketing Services ("Tiger Remarketing") with respect to the sale of the Debtors' machinery, equipment, furniture

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Quantum Foods, LLC (9437); Quantum Foods 213-D, LLC (1862); Quantum Culinary, LLC (1302); GDC Logistics, LLC (1997); Choice One Foods, LLC (9512). The Debtors' mailing address is c/o Quantum Foods, LLC, 750 South Schmidt Road, Bolingbrook, Illinois 60440.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

and fixtures (the "FF&E"); (ii) approving the Agency and Sale Agreement (the "Inventory and IP Agreement", and together with the FF&E Agreement, the "Agreements") between the Debtors and Tiger Capital Group, LLC ("Tiger Capital", and together with Tiger Remarketing, "Tiger") with respect to the sale of the Debtors' inventory and intellectual property (the "Inventory and IP" and together with the FF&E, the "Assets"); (iii) establishing sale procedures regarding a potential sale or sales (collectively, the "Turn-Key Asset Sale") of certain machinery, equipment, and other associated assets (the "Turn-Key Assets") owned by, leased by, or loaned to the Debtors; (iv) absent approval of a Turn-Key Asset Sale by the deadline herein, establishing procedures (the "Liquidation Procedures") for the liquidation and sale of the Assets without further order of the Court; and (v) waiving the information requirements of Local Rule 2016-2; and the Court having reviewed the Motion; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012, (b) venue appropriate pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (d) notice of the Motion was sufficient under the circumstances and no other or further notice is necessary, and (e) a sound business purpose exists for the relief granted herein; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:

    A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.   Approval of the sale of the Assets pursuant to the Turn-Key Asset Sales and Liquidation Procedures is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

D.   The Debtors have demonstrated a good, sufficient and sound business purpose and justification for the sale of the Assets pursuant to the Turn-Key Asset Sales and Liquidation Procedures.

E.   The Debtors may sell the Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

IT IS HEREBY ORDERED THAT:

1.   The Motion is GRANTED as set forth herein.

2.   The Turn-Key Asset Sale Bid Procedures are hereby approved.

3.   In the event that City Capital secures a potential buyer of one or more of the Debtors' Turn-Key Assets, the Debtors shall file a motion to approve the proposed Turn-Key Asset Sale on or before June 11, 2014, with objections to such motion to be filed on or before June 16, 2014 at 12:00 NOON, and the Court shall hold a hearing to approve the proposed Turn-Key Asset Sale on June 17, 2014 at 11:00 a.m. (ET) (the "Turn-Key Sale Hearing").

4.   If less than all of the Assets are sold through Turn-Key Asset Sales, then the Debtors are hereby authorized to sell such remaining Assets pursuant to the Liquidation Procedures.

5. The Liquidation Procedures are hereby approved.

6. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized to perform their obligations under and comply with the terms of the Agreements relating to the sale of the Assets, and to consummate such sales, pursuant to and in accordance with the terms and conditions of the Agreements and the Liquidation Procedures, as outlined herein.

7. The Debtors are authorized to execute and deliver, and empowered to consummate and implement the sale of the Assets pursuant to the Liquidation Procedures, and execute and deliver, and perform under, any additional instruments and documents that the Debtors deem necessary or appropriate to implement such sales, and to take all further actions as may be necessary or appropriate to the performance of the obligations as contemplated thereby.

8. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale of the Assets under the Liquidation Procedures shall be, free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever. Any such Interests shall be transferred and attached to the proceeds of the sale with the same validity and priority, and subject to the same defenses, that such liens had against the Assets.

9. The Debtors shall not be required to file a separate motion or seek court approval for any sale or other disposition of an Asset, or a group of Assets, which are authorized to be sold pursuant to the Liquidation Procedures.

10. At the conclusion of the process, Tiger shall prepare, and the Debtors shall file, a report with the Court that identifies each of the Assets sold pursuant to the Liquidation Procedures, the applicable purchaser, and the price paid for each Asset.

11. The Debtors are hereby authorized to retain and employ Tiger as their agent with respect to the liquidation of the Assets, pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code, Bankruptcy Rules 2014 and 6005 and Local Rule 2014-1, on the terms and conditions set forth in the Motion and the Agreements, as modified by this Order.

12. Tiger shall be compensated for its services and reimbursed for any related expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders or procedures of this Court.

13. Tiger shall not be subject to the compensation procedures established for professionals in these chapter 11 cases. The Debtors are authorized to pay Tiger fees and expenses in accordance with the terms of the Agreements when the fees and expenses come due and without the necessity of filing an interim application for compensation with the Court and without further order of the Court.

14. After the conclusion of its work, Tiger shall file with the Court a final fee application for allowance of its compensation and reimbursement of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; provided, however, that such final fee application need only to describe the services provided by Tiger generally, and that Tiger shall not be required to keep time records of hours spent performing their services. In connection with its final fee application, Tiger shall be required to provide supplemental information regarding Tiger's fees and expenses to the extent requested by the Notice Parties (as defined in the Interim Compensation Order).

15. Notwithstanding anything herein and any provision to the contrary in the Motion or the Agreements, the compensation and expense reimbursement payable to Tiger pursuant to the Agreements and this Order shall be subject to review only pursuant to the standard set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review, including, without limitation, the standard of review set forth in sections 330

or 331 of the Bankruptcy Code; provided, however, that the U.S. Trustee shall retain the right to object to the compensation and expense reimbursement payable to Tiger based on the reasonableness standards set forth in section 330 of the Bankruptcy Code. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of any such compensation and expense reimbursement.

16. The indemnification provisions set forth in the Agreements are approved, subject to the following:

   a. Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, Tiger for any claims arising from, related to, or in connection with the services to be provided by Tiger as specified in the Motion, but not for any claim arising from, related to, or in connection with Tiger's post-petition performance of any other services other than those in connection with the Agreements, unless such post-petition services and indemnification therefor are approved by this Court.

   b. The Debtors shall have no obligation to indemnify Tiger for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Tiger's bad faith, gross negligence or willful misconduct, (ii) settled prior to a judicial determination as to Tiger's bad faith, gross negligence or willful misconduct, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which Tiger is not entitled to receive indemnity under the terms of the Motion.

   c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this chapter 11 case, Tiger believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Motion, including, without limitation, the advancement of defense costs, Tiger must file an application in this Court, and the Debtors may not pay any such amounts to Tiger before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Tiger for

      indemnification, and not as a provision limiting the duration of the Debtors' obligation to indemnify Tiger.

    d. Any limitation of liability or limitation on any amounts to be contributed by the parties to the Agreements under the terms of the Agreements shall be eliminated.

  17. This Order and the terms and provisions of the Agreements shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, Tiger, and their respective affiliates, successors, and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity, or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Order and the terms and provisions of the Agreements, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agreements, as well as the rights and interests granted pursuant to this Order and the Agreements, shall continue in these or any superseding cases and shall be binding upon the Debtors, Tiger and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agreements, and Tiger and such trustee shall be and hereby are authorized to perform under the Agreements upon the appointment of such trustee without the need for further order of this Court.

18. Notwithstanding any other provision of this Order, the FF&E Agreement, or any other order or agreement:[3]

    a. The GECC Equipment shall be sold free and clear of any and all of GECC's liens, claims or interests, with all such liens, claims and interests to attach to the proceeds of the sale of the GECC Equipment, including without limitation, any buyers' premium relating to the sale of any or all of GECC Equipment (the "<u>GECC Sale Proceeds</u>") with the same validity, force, and effect which they now have as against the GECC Equipment, provided, however, that any such lien claim or interest shall not attach to any portion of any amount payable to Tiger as a commission from any buyer's premium.

    b. In connection with any auction (as opposed to a turn-key sale), GECC will have the right to establish reserves on or before June 10, 2014 for any of the GECC Equipment (whether sold separately or in small lots) that GECC's appraiser valued or values in the amount of at least Fifty Thousand Dollars ($50,000) at Public Auction Value.

    c. All GECC Equipment sold in an auction (as opposed to a turn-key sale) will be sold by taking bids allocated solely to each such piece of GECC Equipment or in small lots.

    d. The High Pressure-Pasteurization System ("<u>HPP</u>"), which is a piece of GECC Equipment, will be sold by taking bids allocated solely to the HPP.

    e. Upon 24 hours advance notice, the Debtors will provide GECC and its employees and agents reasonable access to each of the Debtors' locations during normal business hours between May 28, 2014, and the date upon which the last piece of GECC Equipment is auctioned and removed from such locations.

---

[3] For purposes of this Paragraph, (i) "Master Leases" means (x) the Master Equipment Lease Agreement dated June 25, 2007 between Key Equipment Finance Inc. (assignor of GECC), as lessor, and Quantum Foods, LLC, Quantum Culinary, LLC, Quantum Foods 213-D, LLC, and GDC Logistics, LLC, as lessees (together with all amendments, attachments, and schedules thereunder, "Master Lease I"), and (y) the Master Equipment Lease Agreement dated April 19, 2010 between PNCEF, LLC d/b/a PNC Equipment Finance (assignor of GECC), as lessor, and Quantum Foods, LLC, as lessee (together with all amendments, attachments, and schedules thereunder, "Master Lease II"); (ii) "Schedules" means Schedules 12-15 under Master Lease I and Schedules 8703093-002 and 154050000 under Master Lease II, all of which Schedules were assigned to GECC; (iii) " GECC Equipment" means the equipment listed in the Schedules; and (iv) "Pro Rata Percentage" means the percentage determined by dividing the GECC Sale Proceeds (excluding the commission payable to Tiger from any buyer's premium) by the total amount of gross sale proceeds (minus any amounts payable to Tiger).

   f. GECC and the Debtors reserve their respective rights to a Bankruptcy Court determination of (a) the (i) value and/or (ii) appropriate allocation of the purchase price of any GECC Equipment sold in a "turn-key" sale and (b) whether any of the GECC Sale Proceeds shall be payable as a section 506(c) surcharge against the GECC Equipment for the benefit of the Debtors' estates; provided, however, that such surcharge shall not exceed the aggregate sum determined by multiplying each of the following by the Pro Rata Percentage: (i) $272,000 in expenses previously identified by Tiger, (ii) rent and (iii) real estate taxes.

19. Notwithstanding anything in this Order to the contrary, and for the avoidance of doubt, nothing herein shall allow the Debtors to sell or convey in any respect any equipment subject to the equipment lease between the Debtors and Packaging Progression, Inc. ("PPI") without PPI's express prior written consent.

20. Notwithstanding anything in this Order to the contrary, and for the avoidance of doubt, nothing herein shall allow the Debtors to sell or convey in any respect any equipment subject to any equipment lease between the Debtors and TCF Equipment Finance, Inc. ("TCF") without TCF's express prior written consent.

21. Notwithstanding anything in this Order to the contrary, and for the avoidance of doubt, nothing herein shall allow the Debtors to sell or convey in any respect any equipment subject to PNC Equipment Finance Lease numbers 142674000, 144802000, 151718000, 136842000, 138350000 and 148227000 without PNC Equipment Finance's ("PNC") express written consent.

22. The Debtors agree to use commercially reasonable efforts to locate and account for the missing equipment identified by PNC in the objection that it filed to the Motion [Docket No. 366], and provide counsel for PNC with a status report.

23. In the event that no Turn-Key Asset Sale of either of the premises (the "Premises") subject to a lease between the Debtors and Griffin Capital Corporation ("Griffin") is

consummated, the Debtors and Griffin shall work to resolve any disputes regarding ownership of any fixtures located at the Premises. In the event the parties do not reach a consensual agreement, the Court will hold a hearing on June 17, 2014 at 11:00 a.m. to resolve any dispute concerning ownership of fixtures. No alleged fixtures will be removed from the Premises prior to such hearing without the consent of Griffin, which may be withheld in Griffin's sole discretion.

24. To the extent that this Order is inconsistent with the Agreements, the terms of this Order shall govern.

25. This Court retains jurisdiction over any and all matters or disputes with respect to any of the relief granted in this Order.

Dated: Wilmington, Delaware
       June 3, 2014

_____
Kevin J. Carey
United States Bankruptcy Judge