UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                                           :    Chapter 11
*In re:*                                                   :
                                                           :    Case No. 14-10318 (KJC)
QUANTUM FOODS, LLC, *et al.*,[1]                           :
                                                           :    Jointly Administered
            Debtors.                                       :
                                                           :    Hearing Date: June 19, 2014 at 1:00 p.m. (ET)
                                                           :    Objection Deadline: June 18, 2014 at 12:00 NOON (ET)
                                                           :
---------------------------------------------------------- x

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363, AND 365, BANKRUPTCY RULES 2002, 6004 AND 9014, AND LOCAL RULE 6004-1: (I) APPROVING ENTRY INTO PURCHASE AGREEMENT FOR SALE OF EQUIPMENT LOCATED IN THEIR CULINARY AND FOODS FACILITIES; (II) AUTHORIZING PRIVATE SALE OF EQUIPMENT LOCATED IN THEIR CULINARY AND FOODS FACILITIES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS ON TERMS AND CONDITIONS SET FORTH IN PURCHASE AGREEMENT;
AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby move the Court for the entry of an order, in substantially the form attached hereto as

**Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"): (i) approving entry into an asset purchase agreement (the

"Purchase Agreement"), by and between the Debtors (the "Seller") and West Liberty Foods,

L.L.C. (the "Buyer"); (ii) authorizing the private sale of equipment located at the Debtors'

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Quantum Foods, LLC (9437); Quantum Foods 213-D, LLC (1862); Quantum Culinary, LLC (1302); GDC Logistics, LLC (1997); Choice One Foods, LLC (9512). The Debtors' mailing address is c/o Quantum Foods, LLC, 750 South Schmidt Road, Bolingbrook, Illinois 60440.

01:15583858.1

Culinary Facility and Foods Facility, together with all equipment contained therein, free and clear of all liens, claims, interests, encumbrances, and other interests substantially on the terms and conditions set forth in the Purchase Agreement (the "Sale"); and (iii) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## BACKGROUND

1.  As the Court is aware, the Debtors attempted to sell substantially all of their assets at the outset of these cases, but the Debtors' proposed stalking horse bidder determined not to proceed with that transaction. Since that time, the Debtors have explored various options for selling the estates' assets in the interest of maximizing value for all stakeholders.

2.  After extensive analysis, the Debtors determined that a dual-track process was the best way to maximize value of their assets. Accordingly, the Debtors (a) pursued "turn-key" sales of groups of assets, on one track, and (b) at the same time retained Tiger Capital Group LLC ("Tiger") to aid in marketing the "turn-key" strategy and Tiger Remarketing Services to prepare for a liquidation at public action if all the assets are not sold through "turn-key" sales. The "turn-key" strategy called for marketing the Debtors' facilities and equipment in one bulk sale so that a buyer may immediately begin a further protein processing operation.

3.  The Court entered an order approving the Debtors' dual-track process on June 3, 2014 [Docket No. 396] (such order, the "Procedures Order").

4.  The Procedures Order called for "turn-key" bids to be submitted by June 11, 2014, and a corresponding sale motion to be filed that same day for a hearing on June 17, 2014. On June 11, 2014, the Debtors received one "turn-key" bid for two of the Debtors' facilities located in Bolingbrook, Illinois (together with the equipment located therein): the "culinary facility", located at 525 Crossroads Parkway (the "Culinary Facility") and the "foods" facility

located at 750 South Schmidt Road (the "Foods Facility" and together with the Culinary Facility, the "Facilities").  The proposed bid encompasses all equipment located within the Facilities (collectively, the "Equipment"); a list of the Equipment is attached hereto as **Exhibit B**.  In addition to the purchase of the Equipment, the Buyer has separately reached agreement with Griffin Capital ("Griffin"), the owner of the Facilities, for the purchase of the land, improvements and fixtures related to the Facilities.  The Debtors have no ownership interest in the Facilities and accordingly are not seeking approval of the sale of the Facilities; rather, the Debtors hereby seek authority to sell the Equipment located therein.

5. For reasons set forth below, the Debtors were unable to accept the Buyer's bid on June 11, but in response thereto entered into intense negotiations with the Buyer and other stakeholders in order to improve the overall consideration offered by the Buyer.

6. Those negotiations resulted in a bid for the Equipment which the Debtors believe is the highest and best for those assets received by the bid deadline, and one that will maximize value for the Debtors' estates.

## The Facilities and Equipment

7. The Facilities housed the Debtors' corporate headquarters, production and research operations, respectively.

8. The Debtors' corporate headquarters and primary manufacturing facility is located at the Foods Facility.  In addition to its manufacturing capability, the Foods Facility housed a state of the art research and development pilot plant which allowed the Debtors to develop new products and co-create products with their clients.  This research area within the Foods Facility is entirely separate from the manufacturing areas, allowing for research and development without disturbing the Debtors' production at the Foods Facility.  In addition, the

Foods Facility also houses the Debtors' "customer innovation center", which features a full, restaurant style kitchen to replicate the customer's end user preparation and serving environment.

9. The Culinary Facility provided the Debtors with a second manufacturing facility for increased manufacturing capacity.

10. By purchasing the Equipment, the Buyer will have all resources and equipment necessary to operate a state of the art protein processing operation in Bolingbrook, Illinois.

**The Marketing Process**

11. Pursuant to the Procedures Order, Tiger, in concert with City Capital Advisors ("City Capital" and together with Tiger, the "Marketing Professionals"), marketed each of the Facilities and the Debtors' distribution facility located at 550 West North Frontage Road, Bolingbrook, Illinois as "turn-key" plants for the further processing of proteins (in each case, with the equipment located therein).

12. In addition to contacting potential purchasers, a key aspect of the turn-key sale strategy was gaining the buy-in by parties with interests in equipment located at the Facilities and Griffin. The Debtors, aided by their Marketing Professionals, entered into extensive negotiations with those parties to make them comfortable with the prospect of allowing their property or collateral to be conveyed in a "turn-key" transaction. It was critical to the success of a turn-key marketing process that substantially all of the Debtors' equipment lessors and secured parties consent to the sale of their respective property or collateral, as applicable, to a turn-key buyer and therefore be satisfied with the value received for their equipment. This occurred over the past few weeks and the vast majority of such parties consented to the transactions, subject to adequate value being provided. As a result of these negotiations, the Debtors were able to offer the Buyer the ability to immediately begin manufacturing a broad variety of protein products to,

among others, the same customers that until recently did business with the Debtors, subject to the Buyer reaching agreement with the Debtors and Griffin.[2]

13. After receiving the Buyer's bid, the Debtors, with the assistance of their Marketing Professionals, entered into tireless negotiation with the Buyer and Griffin, respectively. After near round the clock negotiations, the Debtors reached agreement with the Buyer and the Buyer also reached agreement with Griffin earlier today.

## SUMMARY OF PURCHASE TERMS[3]

14. The principal terms of the purchase of the Equipment are as follows:

| | |
|---|---|
| **Seller** | Debtors |
| **Buyer** | West Liberty Foods, L.L.C. |
| **Purchase Price** | $11,900,000 |
| **Property to be Sold** | Equipment located at 525 Crossroads Parkway and 750 South Schmidt Road, Bolingbrook, IL (collectively, the "Property"). |
| **Sale to Insider** | The Buyer is not an insider as defined in section 101(31) of the Bankruptcy Code. The transaction contemplated by the Sale is the product of arm's-length negotiations. |
| **Private Sale/No Competitive Bidding** | No auction is contemplated. However, as discussed above, the Property was extensively marketed by the Marketing Professionals. |
| **Closing and Other Deadlines** | No later than (2) two Business Days after consummation of conditions precedent set forth in the Purchase Agreement. |
| **Deposit** | The Purchase Agreement provides that, contemporaneously with the execution of the Purchase Agreement, Buyer shall deposit with the Debtors |

---

[2] The proceeds of the sale of the Equipment will remain subject to the liens and interests of any and all lessors and owners of Equipment, as applicable. The Debtors have reached agreement with almost all such parties as to an allocation of the Purchase Price, and continue to negotiate with such counterparties in efforts to resolve all such objections.

[3] Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Purchase Agreement. In the event of any inconsistency between this Motion, this summary or the Purchase Agreement, the terms of the Purchase Agreement shall govern. As of the date hereof, the Purchase Agreement has not been fully executed. It is the Debtors' expectation that the parties will execute the Purchase Agreement in the coming days, and in no event later than June 18, 2014. At the appropriate time, the fully-executed Purchase Agreement will be filed on the docket.

|  | the sum of $3,125,000 ("Deposit").  The Deposit shall be applied to the Purchase Price at Closing. |
|---|---|
| **Liquidated Damages** | The Purchase Agreement contains a liquidated damages provision.  If the Sale does not close, the Seller will keep the Deposit. |
| **Sale Free and Clear of Claims** | The Debtors seek to sell the Property free and clear of all liens, claims, encumbrances, and other interests, other than Permitted Liens. |
| **Relief from Bankruptcy Rule 6004(h)** | The Debtors seek entry of an order providing that execution of the definitive Purchase Agreement is not subject to Bankruptcy Rule 6004(h). |

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Rule 6004-1: (i) approving the Debtors' entry into the Purchase Agreement; (ii) authorizing the sale of the Equipment free and clear of all liens, claims, encumbrances, and other interests to the Buyer on the terms and conditions set forth in the Purchase Agreement; and (iii) waiving the stay provided under Bankruptcy Rule 6004(h).

**BASIS FOR RELIEF REQUESTED**

15. For the reasons explained herein, the Debtors believe that approval of a private sale of the Equipment to the Buyer on substantially the terms set forth in the Purchase Agreement is appropriate.

**The Sale Contemplated by the Purchase Agreement Should be Approved**

16. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[4] Section 105(a) of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[5] In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of business may be by private sale or by public auction."[6] With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> . . . the notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.[7]

17. To approve a sale of property outside the ordinary course of business, this Court must find that the sale constitutes an exercise of the seller's sound business judgment.[8] The "sound business judgment" test requires a sale proponent to establish four elements to justify the sale of property outside the ordinary course of business. These factors are: (a) a "sound business

---

[4] 11 U.S.C. § 363(b)(1).

[5] 11 U.S.C. § 105(a).

[6] Fed. R. Bankr. P. 6004(f)(1).

[7] Fed. R. Bankr. P. 2002(c)(1).

[8] *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394–95 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 152-53 (D. Del.

purpose" justifies the sale of assets outside the ordinary course of business, (b) the trustee or debtor in possession has obtained a fair and reasonable price, (c) the sale has been proposed in good faith, and (d) adequate and reasonable notice has been provided to interested persons.[9] This analysis also does not change if the proposed sale is private, rather than public.[10] Here, the Sale to the Buyer, pursuant to the terms of the Purchase Agreement, satisfies each requirement of the "sound business judgment" test and should, therefore, be approved.

A.   Proceeding by Private Sale Reflects an Exercise of the Debtors' Business Judgment

18.   There is a sound business justification for the Debtors' determination to proceed by private sale, rather than conducting a public sale for the Equipment.

19.   As described above, the proposed Sale is the result of extensive marketing efforts by the Marketing Professionals. Indeed, as this Court is well aware, substantially all of the Debtors' assets have been extensively marketed, both pre- and post-petition, through well regarded third party bankers. The Debtors submit that they have fully explored potential sales of the Debtors' assets and this offer for the Equipment is the best option at this point. Based on those efforts, the Debtors have concluded that a sale to the Buyer (particularly in light of the restrictions on the Debtors' resources due to their terminated operations and their secured lenders' unwillingness to fund beyond the contemplated orderly wind down)—rather than any further auction process—is appropriate under the circumstances. The Marketing Professionals

---

1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *see also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

[9]   *See In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).

[10]   *See, e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D. P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D. P.R. 1992); *accord*, *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

and Tiger Remarketing Services have informed the Debtors, in their opinion, that the "open outcry" auction alternative for the Equipment set forth in the Procedures Order would garner less proceeds for the Debtors' estates than the sale contemplated by the Purchase Agreement.

20. Indeed, in light of the extensive pre- and post-petition marketing processes the Debtors have implemented, and the Buyer's agreement with Griffin with respect to its purchase of the Facilities from Griffin, the Debtors believe that the bid offered by the Buyer would meet or exceed any offer submitted if the Equipment were subjected to a public auction. Specifically, much of the equipment is large and difficult to remove from the Facilities, and for that reason the Debtors and the Marketing Professionals believe it is unlikely that any other buyer would pay more for the Equipment than the consideration set forth in the Purchase Agreement.

21. Accordingly, the Debtors believe that the added costs associated with a public auction would not produce any additional benefit and could, in fact, be detrimental to the Debtors' estates and creditors.

B.  The Purchase Price is Fair and Reasonable

22. The Debtors believe that, based on the extensive marketing conducted for the Debtors' assets over the period of many months, the Purchase Price is fair and reasonable. The Purchase Price is the result of arm's-length negotiations among the Buyer and the Debtors. The Debtors have carefully considered and analyzed the Buyer's offer and, in fact, have improved it through extensive negotiations over recent days prior to seeking the relief requested herein. Based on this analysis, the Debtors have concluded that selling the Equipment on the terms set forth in the Purchase Agreement will result in obtaining maximum value for such assets and is in the best interest of the Debtors' estates. The Sale will be in exchange for fair and reasonable value as the Buyer has agreed to provide consideration for the Equipment in the amount of $11,900,000. As explained above, the Debtors and their advisors previously marketed the

Equipment in a manner that they believe is appropriate under the circumstances. Any additional marketing could create a net loss to these estates given the value of, and market for, these assets in light of the Purchase Price.

23. In light of the extensive marketing efforts, in consultation with their consultants and advisors, the Debtors believe that the Purchase Price provides fair and reasonable value for the Equipment.

C. Adequate and Reasonable Notice of the Sale Has Been Provided

24. The Debtors have provided adequate notice of the proposed Sale to all parties-in-interest, as required by the Procedures Order and the applicable procedural rules.[11]

**The Sale Should be Approved Under 11 U.S.C. § 363(f) and 363(m)**

A.   The Sale Should be Free and Clear of Liens, Claims, and Interests (Except as Otherwise Set Forth in the Purchase Agreement)

25. In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a

---

[11] *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); *see also*, *Delaware & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

*bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.[12]

26.     The Debtors submit that one or more of the requirements set forth in section 363(f) of the Bankruptcy Code are satisfied.  Accordingly, the Debtors request that the sale of the Equipment be approved "free and clear" (other than Permitted Liens) with any liens, claims, interests, and encumbrances to attach to proceeds of the Sale.

B.      The Sale is Proposed in Good Faith Within the Meaning of 11 U.S.C. §363(m)

27.     The terms of the Sale were negotiated at arm's-length, without collusion, and in good faith.  Accordingly, the Debtors request that the Court find that the Buyer is entitled to the protections provided by section 363(m) of the Bankruptcy Code as a good faith purchaser. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale … under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.[13]

28.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'."[14]  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion

---

[12] 11 U.S.C. § 363(f); *see In re Elliot*, 94 B.R. 343, 354 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met).

[13] 11 U.S.C.§ 363(m).

[14] *Abbotts Dairies*, 788 F.2d at 147.

between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."[15] Due to the absence of any bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."[16]

29.     The sale transaction has been proposed in good faith as the Purchase Agreement is the product of good faith, arm's-length negotiations between the Debtors and the Buyer, with the Debtors supported by their professionals including the Marketing Professionals. The Debtors believe and submit that the Sale pursuant to the terms and conditions of the Purchase Agreement is not the product of collusion or bad faith. No evidence exists to suggest that the terms and conditions of the Purchase Agreement are anything but the product of arm's-length negotiations between the Debtors and the Buyer, in each case aided by their respective professional advisors.

30.     The Buyer does not share common ownership with any of the Debtors, each are independently controlled and operated, and is not otherwise affiliated with the Debtors or their officers, members and managers.

31.     As highlighted above, the Sale is being proposed in good faith and there is no evidence of fraud or collusion. All negotiations have been conducted on an arm's-length basis, and the Buyer is independent from, and not affiliated with, the Debtors or their officers, members and managers. In light of these facts, the Debtors submit that the Buyer should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.[17]

---

[15]     *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

[16]     *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1198 (7th Cir. 1978)).

[17]     *See generally Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, No. 89 Civ. 3704 (KMW), 1990 WL 212899, at *2 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of good faith, a party must demonstrate "fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders"); *see also generally In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus.*

**Relief Under Bankruptcy Rule 6004(h) is Appropriate**

32.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

33.     There is a sufficient basis for a waiver of the 14-day stay required under Bankruptcy Rule 6004(h) as waiving such stay will not prejudice the Debtors, their estates, or any party in interest.  Accordingly, the Debtors hereby request that the Court waive the 14-day stay provided for in Bankruptcy Rules 6004(h).[18]

**NOTICE**

34.     Notice of this Motion has been provided to: (a) the Office of the United States; (b) counsel to the Committee; (c) counsel to the Buyer; (d) those parties that have expressed an interest in the Equipment; and (e) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

---

*Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings").

[18]   *See* Del. Bankr. L.R. 6004-1(b)(iv)(O).

**CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>: (i) approving entry into the Purchase Agreement; (ii) authorizing the sale of the Equipment and certain related assets free and clear of all liens, claims, encumbrances, and other interests to the Buyer substantially on the terms and conditions set forth in the Purchase Agreement; (iii) waiving the stay under Bankruptcy Rule 6004(h); and (iv) granting such other and further relief as the Court deems just and proper.

Dated: June 13, 2014
       Wilmington, Delaware

                             */s/   Andrew L. Magaziner*
                             M. Blake Cleary (No. 3614)
                             Kenneth J. Enos (No. 4544)
                             Andrew L. Magaziner (No. 5426)
                             Rodney Square
                             1000 North King Street
                             Wilmington, Delaware 19801
                             Telephone: (302) 571-6600
                             Facsimile: (302) 571-1253
                             M. Blake Cleary (No. 3614)

                             -and-

                             WINSTON & STRAWN LLP

                             Daniel J. McGuire
                             Gregory M. Gartland
                             Caitlin S. Barr
                             35 West Wacker Drive
                             Chicago, Illinois 60601
                             Telephone: (312) 558-5600
                             Facsimile: (312) 558-5700

                             *Attorneys for the Debtors and Debtors in Possession*