## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>QUANTUM FOODS, LLC ET AL.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-10318 (KJC)<br><br>Jointly Administered |
| RAGING BULL ACQUISITION COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>QUANTUM FOODS, LLC, QUANTUM FOODS 213-D, LLC, QUANTUM CULINARY, LLC, GDC LOGISTICS, LLC, and CHOICE ONE FOODS, LLC,<br><br>Defendants. | Adv. Proc. No. 14-50360 (KJC)<br><br>**Hearing Date: Only if Objections are Received**<br>**Objection Deadline: September 17, 2015 at 4:00 p.m.** |

## NOTICE OF DEBTORS' ENTRY INTO SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS, THE DIP LENDERS, RAGING BULL ACQUISITION COMPANY LLC, AND OAKTREE CAPITAL MANAGEMENT, LP

Quantum Foods, LLC and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), a defendant and cross-claimant plaintiff in the above-captioned adversary proceeding (the "Raging Bull Litigation" or the "Adversary Action"), have entered into a confidential settlement agreement (the "Settlement Agreement") by and among (i) the Debtors; (ii) Raging Bull Acquisition Company LLC ("Raging Bull"), the plaintiff and cross-claim defendant in the Adversary Proceeding; (iii) Oaktree Capital Management, LP ("Oaktree"), a cross-claim defendant in the Adversary Proceeding; and

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Quantum Foods LLC (9437); Quantum Foods 213-D, LLC (1862); Quantum Culinary, LLC (1302); GDC Logistics, LLC (1997); Choice One Foods, LLC (9512).

(iv) Crystal Financial LLC, Solar Capital Ltd., Crystal Financial SPV LLC, and DA Funding LLC (collectively, the "DIP Lenders," and collectively with the Debtors, Raging Bull and Oaktree, the "Parties").

### Background Regarding Failed Sale and Raging Bull Litigation

The Debtors commenced these Chapter 11 Cases with the goal of consummating a going-concern sale of their businesses.  In furtherance thereof, at the outset of these cases, the Debtors filed a motion [Docket No. 16] seeking, among other things, entry of an order (the "Bid Procedures Order") (a) approving and authorizing bidding procedures in connection with the sale (the "Going Concern Sale") of substantially all of the Debtors' assets (the "Operating Assets"), including the authorization to enter into a stalking horse agreement with CTI Foods Holdings Co., LLC ("CTI"), (b) scheduling the related auction and hearing to consider approval of the Going Concern Sale, (c) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases, (d) approving the form and manner of notice thereof, and (e) granting related relief.

Upon the appointment of the Official Committee of Unsecured Creditors (the "Committee"), the Committee began exploring alternative stalking horse purchasers with the assistance of its advisors.  As a result of those discussions and diligence conducted in conjunction therewith, the Debtors entered into a replacement stalking horse agreement (the "Stalking Horse Agreement") with Raging Bull, whereby Raging Bull replaced CTI as the stalking horse purchaser for the Operating Assets.  On March 18, 2014, the Court entered the Bid Procedures Order, as modified, to reflect the Stalking Horse Agreement and established certain deadlines in connection with the contemplated Going Concern Sale.  *See* Docket No. 162. Pursuant to the Bid Procedures Order, April 16, 2014 (the "Bid Deadline") was established as the

deadline by which interested bidders were required to submit offers for the Operating Assets. The Debtors did not receive any qualifying bids other than the Stalking Horse Agreement prior to the Bid Deadline, and the auction for the Operating Assets was, accordingly, cancelled. *See* Docket No. 241.  Pursuant to the Bid Procedures Order, Raging Bull paid the Debtors, consistent with the terms of the Stalking Horse Agreement, a deposit in the amount of $5,400,000 (the "Deposit"), which the Debtors currently hold.

Subsequent to the Bid Deadline, and in advance of the scheduled sale hearing (the "Sale Hearing") with respect to the Stalking Horse Agreement, the Debtors and Raging Bull engaged in negotiations for multiple weeks regarding the purchase price for the Operating Assets and the terms of the contemplated transaction.  As announced at the status conference held on May 12, 2014, Raging Bull ultimately determined not to proceed with the transaction and elected not to purchase the Operating Assets, and the Sale Hearing never occured.  As a consequence thereof, the Debtors, in consultation with their advisors and the DIP Lenders, determined that it was in the estates' best interest to immediately commence certain liquidation initiatives and the Debtors' employees were notified of their impending termination.

Following the failed Going Concern Sale, Raging Bull and certain affiliates initiated the Raging Bull Litigation against the Debtors on May 12, 2014, by filing that certain *Complaint for Return of Deposit Under Asset Purchase Agreement* [Adv. Proc. 14-10318, Docket No. 1] (the "Complaint"), pursuant to which, among other things, Raging Bull sought the return of the Deposit.

In the Complaint, Raging Bull asserted that the Deposit was not property of the Debtors' estates pursuant to the terms of the Bid Procedures Order and Raging Bull was entitled to have the Deposit returned following the allegedly proper termination of the Stalking Horse

Agreement.  Raging Bull also asserted that the Debtors had breached the Stalking Horse

Agreement, and as a result thereof, were required to return the Deposit to Raging Bull.

On July 8, 2015, the Debtors filed their Answer and Counterclaims [Adv. Proc.

14-10318, Docket No. 10] (respectively, the "Answer" and "Debtors' Counterclaims"), pursuant

to which the Debtors denied certain averments set forth in the Complaint.  Moreover, the Debtors

raised eight affirmative defenses in the Answer, arguing that (i) Raging Bull had failed to state a

claim with respect to any of the alleged breaches, the termination of the Stalking Horse

Agreement, and the return of the Deposit; (ii) Raging Bull's claims were barred by the

prevention doctrine; (iii) Raging Bull's claims were barred by the doctrine of frustration of

purposes; (iv) Raging Bull's claims were barred under the doctrine of equitable estoppel;

(v) Raging Bull's claims were barred to the extent based on an alleged failure of Quantum to

deliver assets that were not expressly included in the Stalking Horse Agreement; (vi) Raging

Bull's claims were barred due to its own failure to substantially perform under the Stalking

Horse Agreement; (vii) Raging Bull's claim for breach of contracts based on Quantum's alleged

inability to transfer a right to use the wastewater treatment facilities failed because of a cross-

default provision; and (viii) Raging Bull's claim for breach of contract was barred by Raging

Bull's fraud in the inducement and performance of the contract.[2]

In addition, the Debtors asserted the Debtors' Counterclaims against Raging Bull

and Oaktree (together, the "Counterclaim Defendants").  Specifically, the Debtors asserted

causes of action based on fraud in the inducement, fraud, breach of the implied covenant of good

faith and fair dealing, breach of contract, and aiding and abetting against such parties.

---

[2]     The Debtors subsequently amended their Answer on July 14, 2014.  *See* Adv. Proc. 14-10318, Docket No. 14.

The Counterclaim Defendants filed their answer to the Debtors' Counterclaims on July 14, 2014, and raised various affirmative defenses therein.  *See* Adv. Proc. 14-10318, Docket No. 13.  Specifically, the Counterclaim Defendants asserted, among other things, that the Debtors' Counterclaims (i) failed to state a claim upon which relief could be granted; (ii) were barred by the prevention doctrine; (iii) were barred by Quantum's fraud in the performance of the contract; (iv) were barred, in whole or in part, by Quantum's material breach of the Stalking Horse Agreement; (v) were barred, in whole or in part, by the doctrine of waiver; (vi) were barred, in whole or in part, by equitable estoppel; (vii) were barred, in whole or in part, by the doctrine of unclean hands; (viii) should be reduced in whole or in part by Quantum's potential failure to mitigate; (ix) were limited by the remedies clause in the Stalking Horse Agreement; (x) were subject to Oaktree's setoff rights; and (xi) were subject to Oaktree's right of recoupment.

On July 15, 2015, the Counterclaim Defendants filed that certain *Motion for Order Dismissing Specified Counts of Counterclaims Included in Defendants' Answer* [Adv. Proc. 14-10318, Docket No. 16] (the "Motion to Dismiss") and memorandum of law in support thereof.  *See* Adv. Proc. 14-10318, Docket No. 17.  The Court subsequently entered a scheduling order on August 1, 2014, pursuant to which the Motion to Dismiss was scheduled for oral argument on October 6, 2014.

The Raging Bull Litigation was subsequently assigned to mediation, and upon consent of the Debtors and the Counterclaim Defendants, the Honorable Kevin Gross was appointed as mediator (the "Mediator").

Pending mediation, the Debtors filed an answering brief in opposition to the Motion to Dismiss on August 15, 2014, and the Counterclaim Defendants filed a reply brief on

August 29, 2014.  *See* Adv. Proc. 14-10318, Docket Nos. 28 and 33.

   The Mediator conducted an initial mediation on September 29, 2014, but as reflected in the status report filed by the Counterclaim Defendants, the parties were unable to reach a settlement at mediation.  Approximately five weeks later, on November 4, 2014, the Court issued its order denying the Motion to Dismiss.  *See* Adv. Proc. 14-10318, Docket No. 46.

### Litigation History, Settlement Negotiations and the Settlement Agreement

   Beginning in late 2014, the Debtors and the Counterclaim Defendants initiated and engaged in extensive written fact discovery and, subsequent thereto, conducted multiple rounds of depositions and document productions.  To date, the Debtors have deposed multiple witnesses testifying on behalf of the Counterclaim Defendants, and the Counterclaim Defendants have deposed multiple witnesses testifying on behalf of the Debtors.  In addition, certain third parties have been subpoenaed, been deposed or produced documents in connection with the Raging Bull Litigation over the last six months.

   On July 9, 2015, after the conclusion of significant discovery, the Debtors and Counterclaim Defendants entered into a *Stipulation of Dismissal of Counts I, II and V of Quantum's Counterclaims with Prejudice*, which dismissed the Debtors' fraud, fraud in the inducement and aiding and abetting claims with prejudice.

   Throughout the Raging Bull Litigation, the Parties have engaged in good faith negotiations to resolve the Adversary Action and both sides have entertained and considered numerous settlement offers. Indeed, the Parties have participated in multiple rounds of mediation before the Mediator.

   As a result of the efforts described herein, and to curtail protracted litigation going forward, at this time, the Parties have reached a global settlement resolving the Adversary Action

in its entirety.

The terms of the Settlement Agreement have been shared with the Mediator and the Office of the United States Trustee, and, upon gaining Court approval, will allow the Debtors to maintain a portion of the Deposit.  Accordingly, the Settlement Agreement will generate proceeds for the Debtors' estates, which shall be distributed in accordance with the distribution protocol approved by the Court pursuant to that certain *First Amended Order Amending Final Order (1) Authorizing Post-Petition Financing, (2) Granting Liens and Providing Super Priority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (4) Modifying the Automatic Stay, Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014* [Docket No. 353].  Moreover, upon entry of an order approving the Settlement Agreement, the Adversary Action shall be immediately dismissed, thus mitigating any future administrative expense claims arising therefrom.

The Debtors entered into the Settlement in an exercise of their sound business judgment, and have determined that the settlement contemplated thereby is a fair, equitable and reasonable outcome of the Raging Bull Litigation.  In reaching that conclusion, the Debtors considered the complexity of the issues implicated by the Raging Bull Litigation, the probability of success if they participated in further litigation, and the inconvenience, delay and cost attending to resolution of the dispute regarding the Deposit.

**PLEASE TAKE NOTICE** that the Settlement Agreement is governed by, and subject to, a confidentiality agreement by and between the Parties and, accordingly, the Debtors do not intend to publicly file such Settlement Agreement with the Court.

**PLEASE TAKE FURTHER NOTICE** that, if you object to the Debtors' entry into the Settlement Agreement, you shall file a written objection by **September 17, 2015 at 4:00 p.m. (ET)** (the "Objection Deadline"), and serve such objection on: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' undersigned counsel; (iii) counsel to the Parties; (iv) counsel to the Committee; and (v) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that, if no objections are received prior to the Objection Deadline, the Debtors shall submit an appropriate order approving the Settlement Agreement under certification of counsel, which may be entered by the Court without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that, if objections are received by the Objection Deadline, and such objections or responses cannot be informally resolved, the Debtors shall schedule a hearing on the next scheduled omnibus hearing date for consideration of the Settlement Agreement and approval thereof.

Dated:    September 3, 2015           YOUNG CONAWAY STARGATT & TAYLOR, LLP
          Wilmington, Delaware

                                      */s/ M. Blake Cleary*
                                      M. Blake Cleary (No. 3614)
                                      Kenneth J. Enos (No. 4544)
                                      Andrew L. Magaziner (No. 5426)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 571-6600
                                      Facsimile: (302) 571-1253

                                      *Counsel for Debtors and Debtors in Possession*

01:17565256.4